**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OMNI BRIDGEWAY LIMITED,

*Petitioner*,

v.

MINISTRY OF INFRASTRUCTURE AND ENERGY OF THE REPUBLIC OF ALBANIA, *et al*.,

*Respondents*.

Civil Action No. 23-1938 (LLA)

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO SET ASIDE THE ENTRIES OF DEFAULT, VACATE THE DEFAULT JUDGMENT, AND VACATE THE COURT'S SECTION 1610(C) ORDER**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 1

ARGUMENT ........ 5

I. The Entries of Default Should Be Set Aside and the Default Judgment Vacated. ........ 5

A. Respondents' Meritorious Defenses Warrant Setting Aside the Entries of Default and Render the Default Judgment Void. ........ 7

B. Respondents Did Not Willfully Default. ........ 15

C. Petitioner Will Not Be Prejudiced by Setting Aside the Defaults and Default Judgment. ........ 16

II. The Court's Section 1610(c) Order Should Be Vacated. ........ 16

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acree v. Iraq*,
658 F. Supp. 2d 124 (D.D.C. 2009) ....................6, 16

*Afr. Growth Corp. v. Republic of Angola*,
No. (BAH) 17-2469,
2018 U.S. Dist. LEXIS 204152 (D.D.C. Dec. 3, 2018) ....................7, 16

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
734 F.3d 1175 (D.C. Cir. 2013) ....................8, 16

*Beztak Constr. Co. v. Kesling Carpets, Inc.*,
596 So. 2d 1297 (Fla. Dist. Ct. App. 1992) ....................10

*Biton v. Palestinian Interim Self-Gov't Authority*,
233 F. Supp. 2d 31 (D.D.C. 2002) ....................7, 15

*Broad v. Anlagenbau*,
10 P.3d 371 (Wash. 2000) ....................19

*Brooks v. Rosebar (In re Rosebar)*,
674 B.R. 810 (D.D.C. 2025) ....................17

*Brown v. China Integrated Energy, Inc.*,
285 F.R.D. 560 (C.D. Cal. 2012) ....................18

*Calista Enters. Ltd. v. Tenza Trading Ltd.*,
40 F. Supp. 3d 1371 (D. Or. 2014) ....................18

*Capital Yacht Club v. Vessel Aviva*,
228 F.R.D. 389 (D.D.C. 2005) ....................15

*Combs v. Nick Garin Trucking*,
825 F.2d 437 (D.C. Cir. 1987) ....................12

*FG Hemisphere Assocs. v. Democratic Republic of Congo*,
447 F.3d 835 (D.C. Cir. 2006) ....................6

*Flanagan v. Islamic Rep. of Iran*,
190 F. Supp. 3d 138 (D.D.C. 2016) ....................5

**Gosain v. Republic of India*,
No. 18-2427 (TJK),
2026 U.S. Dist. LEXIS 57954 (D.D.C. Mar. 19, 2026) ....................11, 12, 13

*Estate of Hartwick v. Islamic Republic of Iran*,
No. 18-1612 (CKK),
2020 U.S. Dist. LEXIS 262207 (D.D.C. Oct. 10, 2020) ........ 11

**Haskins v. U.S. One Transp., LLC*,
755 F. Supp. 2d 126 (D.D.C. 2010) ........ 10, 15

*Estate of Hirshfeld v. Islamic Republic of Iran*,
235 F. Supp. 3d 45 (D.D.C. 2017) ........ 17

*Howe v. Embassy of Italy*,
68 F. Supp. 3d 26 (D.D.C. 2014) ........ 17

*Hughes v. Holland*,
320 F.2d 781 (D.C. Cir. 1963) ........ 6

**Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*,
288 F. Supp. 2d 22 (D.D.C. 2003) ........ 5, 15

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ........ 14

**Jackson v. Beech*,
636 F.2d 831 (D.C. Cir. 1980) ........ 5

*Jerez v. Republic of Cuba*,
775 F.3d 419 (D.C. Cir. 2014) ........ 16

**Keegel v. Key W. & Caribbean Trading Co.*,
627 F.2d 372 (D.C. Cir. 1980) ........ 5, 7, 15, 16

*Kemp v. United States*,
596 U.S. 528 (2022) ........ 17

*Lawton v. Republic of Iraq*,
No. 02-cv-0474,
2006 U.S. Dist. LEXIS 94335 (D.D.C. Dec. 6, 2006) ........ 7

*Luna v. Rambo*,
273 F.R.D. 346 (D.D.C. Apr. 14, 2011) ........ 15

*Magee v. Amazon Corp., LLC*,
No. 25-1241,
2026 U.S. Dist. LEXIS 124802 (E.D. La. May 18, 2026) ........ 8, 10

*Mayorga v. Ronaldo*,
No. 2:19-cv-00168-JAD-CWH,
2019 U.S. Dist. LEXIS 60023 (D. Nev. Apr. 8, 2019) ....................18

*Mohamad v. Rajoub*,
634 F.3d 604 (D.C. Cir. 2011) ....................5

*Montes v. Janitorial Partners, Inc.*,
No. 13-cv-410 (RJL/RMM),
2019 U.S. Dist. LEXIS 133306 (D.D.C. June 2, 2019) ....................8

*Mwani v. Bin Laden*,
417 F.3d 1 (D.C. Cir. 2005) ....................14

**Owens v. Republic of Sudan*,
374 F. Supp. 2d 1 (D.D.C. 2005) ....................6

**Pablo Star Ltd. v. Welsh Gov't*,
170 F. Supp. 3d 597 (S.D.N.Y. 2016) ....................18, 19

**Patel v. Socialist People's Libyan Arab Jamahiriya*,
No. 06-0626 (PLF),
2007 U.S. Dist. LEXIS 109240 (D.D.C. Apr. 19, 2007) ....................8, 10

*Peak v. District of Columbia*,
236 F.R.D. 13 (D.D.C. 2006) ....................10

*Port Authority GSS Grp. Ltd v. Nat'l Port Auth.*,
680 F.3d 805 (D.C. Cir. 2012) ....................12

**Practical Concepts, Inc. v. Republic of Bolivia*,
811 F.2d 1543 (D.C. Cir. 1987) ....................6

*Price v. Socialist People's Libyan Arab Jamahiriya*,
294 F.3d 82 (D.C. Cir. 2002) ....................12

**Przewozman v. Islamic Republic of Iran*,
628 F. Supp. 3d 307 (D.D.C. 2022) ....................12, 18, 19

*Pulliam v. Pulliam*,
478 F.2d 935 (D.C. Cir. 1973) ....................6

*Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*,
No. 22-3631 (RC),
2024 U.S. Dist. LEXIS 172039 (D.D.C. Sept. 24, 2024) ....................7

*Republic of Sudan v. Harrison*,
587 U.S. 1 (2019) ....................10

*Roth v. Islamic Republic of Iran*,
651 F. Supp. 3d 65 (D.D.C. 2023) ....................13

*Rusesabagina v. Republic of Rwanda*,
No. 22-cv-469,
2023 U.S. Dist. LEXIS 44914 (D.D.C. Mar. 16, 2023) ....................14

*Salmeron v. District of Columbia*,
113 F. Supp. 3d 263 (D.D.C. 2015) ....................16

*Shatsky v. Syrian Arab Republic*,
795 F. Supp. 2d 79 (D.D.C. 2011) ....................7

*STS Prods. v. Boss Sols. LLC*,
No. H-19-4003,
2020 U.S. Dist. LEXIS 264287 (S.D. Tex. Jan. 21, 2020) ....................18

*Stuart-Findlay v. Bank of Am., Nat'l Ass'n*,
183 So. 3d 468 (Fla. Dist. Ct. App. 2016) ....................10

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) ....................11, 12

*UAB Skyroad Leasing v. OJSC Tajik Air*,
No. 20-cv-00763,
2021 U.S. Dist. LEXIS 13872 (D.D.C. Jan. 26, 2021) ....................14

**UAB Skyroad Leasing v. OJSC Tajik Air*,
No. 21-56124,
2022 U.S. App. LEXIS 16977 (D.C. Cir. June 17, 2022) ....................13, 14

*United States v. Islip*,
18 F. Supp. 2d 1047 (Ct. Int'l Trade 1998) ....................2, 3

*Warren v. Jarrold*,
No. 2:21-cv-11734,
2021 U.S. Dist. LEXIS 220137 (E.D. Mich. Nov. 15, 2021) ....................19

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) ....................2, 3, 11

*Whelan v. Abell*,
48 F.3d 1247 (D.C. Cir. 1995) ....................7

*Williams v. Romarm*,
756 F.3d 777 (D.C. Cir. 2014) ....................14

**Constitutional Provisions**

U.S. Const. amend. V ........ 13

**Statutes**

28 U.S.C. § 1330 ........ 12, 14

28 U.S.C. § 1608 ........ *passim*

28 U.S.C. § 1610 ........ *passim*

**Rules**

Federal Rule of Civil Procedure 55(a) ........ 8, 10

Federal Rule of Civil Procedure 55(c) ........ 1, 5, 7, 15

Federal Rule of Civil Procedure 60(b) ........ *passim*

**Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ........ 8

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ........ 2, 3, 11, 13

Restatement (First) of Judgments §§ 5-7 (1942) ........ 8

## INTRODUCTION

Respondents the Ministry of Infrastructure and Energy of the Republic of Albania ("MIE"), the National Agency of Natural Resources of Albania ("AKBN"), and Albpetrol Sh.A ("Albpetrol") (collectively, "Respondents") respectfully submit this Memorandum of Law in support of their Motion to Set Aside the Entries of Default, Vacate the Default Judgment, and Vacate the Court's Section 1610(c) Order.

There is good cause to set aside the entries of default and vacate the default judgment under Federal Rules of Civil Procedure 55(c) and 60(b)(4), respectively. All of the factors that courts look to in deciding whether to grant such relief are satisfied. Respondents have meritorious defenses that will dispose of this action. Petitioner failed to establish proper service on any of the Respondents, each of which is a foreign sovereign State within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq*., who must be served in accordance with that statute's service provisions, 28 U.S.C. § 1608. The Court also lacks personal jurisdiction over Respondents. Moreover, Respondents did not willfully default, and Petitioner will not be prejudiced by having the defaults set aside and the default judgment vacated.

The Court should also vacate its Section 1610(c) order under Rule 60(b)(4) because there is no basis to permit the execution of a void judgment. Additionally, the Section 1610(c) order should be vacated under Rule 60(b)(1) because Petitioner did not properly serve the default judgment, a prerequisite to the entry of an order under Section 1610(c).

## BACKGROUND

GBC Oil Company Ltd. ("GBC") initiated an arbitration against Respondents before the International Chamber of Commerce in Zurich, Switzerland arising out of license agreements for

the development of Albanian oilfields and related petroleum agreements. ECF No. 1 ¶¶ 19-33.[1] The arbitral proceedings resulted in the issuance of an award against Respondents MIE, AKBN, and Albpetrol. ECF No. 1-2. On July 5, 2023, Petitioner Omni Bridgeway Limited, as purported assignee of GBC's rights under the award, ECF No. 1 at 1, filed the present petition to confirm the award against Respondents.

On July 24, 2023, Petitioner initiated the process for serving Respondents pursuant to 28 U.S.C. § 1608—MIE and AKBN under subsection (a)(2), and Albpetrol under subsection (b)(2)—via the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361. Petitioner did so by mailing the service packages to Albania's Central Authority, its Ministry of Justice. ECF No. 6 at 2.; *see also* ECF Nos. 7, 9. Under Article 5 of the Hague Convention, "[o]nce a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method that the sender requests, provided that the method is compatible with local law." *United States v. Islip*, 18 F. Supp. 2d 1047, 1055 (Ct. Int'l Trade 1998); *see also Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017) ("When a central authority receives an appropriate request [for service], it must serve the documents or arrange for their service[.]") (citing Hague Convention, art. 5). On November 2, 2023, Albania's Central Authority informed Petitioner that it had transmitted the service request to the Court of First Instance of General Jurisdiction in Tirana, Albania, the competent court for processing service under Albanian law. *See* ECF No. 6-1 at 2.

[1] By including factual assertions made in the Petition, Respondents do not concede their veracity, and reserve all their rights, including without limitation, to dispute those facts at any later stage of this proceeding.

To evidence the completion of service, Article 6 of the Hague Convention requires "[t]he central authority … [to] provide[] the sender with a certificate of service that conforms to a specified model." *Islip*, 18 F. Supp. 2d at 1055; *see also Water Splash, Inc.*, 581 U.S. at 275 (noting that the central authority "must … provide a certificate of service") (citing Hague Convention, art. 6). Nonetheless, on January 23, 2024, without ascertaining the status of the service proceedings in Albania, Petitioner sent the Albanian Central Authority a letter "demand[ing]" that it "immediately provide to us certificates of service confirming that the service packets have been served on the respondents." ECF No. 7-8 at 3. The Albanian Central Authority did not provide Petitioner with such certificates. ECF No. 13; ECF No. 14 at 16.

On February 27, 2024, despite not having received the required certificates, Petitioner filed an affidavit requesting that the Clerk of the Court enter defaults against Respondents. Petitioner erroneously stated that Albania's "Central Authority [w]as [s]erved [p]ursuant to Hague Convention on July 31, 2023." ECF No. 9 at 1. However, this was the date when the Central Authority *received* the service packages, ECF No. 6 at 2, not the date of any service. Petitioner's own correspondence confirms its knowledge that service had not occurred on that date. In a letter dated October 10, 2023, Petitioner wrote to the Albanian Central Authority: "on July 31, 2023, we received a signed delivery confirmation from Federal Express for the hard copy materials. *However, we have not received any other communication from you indicating that you have served these documents or even confirming receipt of our request*." ECF No. 7-4 at 2 (emphasis added). Albania's Central Authority subsequently clarified, in a letter to Petitioner dated November 2, 2023, that it had "forwarded" the service packages "to the Court of First Instance of General Jurisdiction in Tirana … with the purpose of notifying and submitting the relevant documents" to Respondents. ECF No. 6-1 at 2. And Petitioner's January 23, 2024 letter to the Albanian Central

Authority recognized that, as late as November 2023, service had not been completed. ECF No. 7-8 at 2. Nonetheless, Petitioner represented to the Clerk that Respondents had been served on July 31, 2023. ECF No. 9 at 1.

On February 29 and March 4, 2024, on the basis of Petitioner's inaccurate representation concerning the completion of service, the Clerk entered defaults against MIE and Albpetrol, and against AKBN, respectively. ECF Nos. 10, 11. In fact, no default should have been entered as the 60-day period for Respondents to respond to the petition, which by statute begins to run on the date of service, 28 U.S.C. § 1608(d), had not yet begun.

On April 24, 2024, having obtained entries of default by inaccurately representing that service had been completed when the Central Authority had received the service packages, Petitioner filed a motion for default judgment against Respondents. ECF No. 13. Though the Albanian Central Authority had issued no certificates of service, and despite the absence of any other evidence that service had been completed under Albanian law, the Court granted Petitioner's motion on February 14, 2025. ECF No. 15.

Section 1608(e) of the FSIA requires that "a copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in" Section 1608. 28 U.S.C. § 1608(e). On February 28, 2025, Petitioner initiated the process to serve the default judgment on Respondents pursuant to the Hague Convention by sending copies to Albania's Central Authority for service on Respondents. ECF No. 16.

Just five weeks later, on April 9, 2025, without waiting for Albania's Central Authority to return certificates of service, *see* ECF No. 27-1 ¶ 4, Petitioner purported to attempt service under 28 U.S.C. §§ 1608(a)(3) and (b)(3)(B) by requesting that the Clerk send to Albania's Minister for Europe and Foreign Affairs, and to each Respondent's address, respectively, copies of the default

judgment. ECF Nos. 17 to 18-1. On April 15, 2025, the Clerk dispatched the requested service packages. ECF Nos. 20 to 25.

On August 20, 2025, Petitioner filed a motion under Section 1610(c) asking the Court to authorize attachment and execution, asserting that the default judgment had been properly served on Respondents and that a reasonable period of time had elapsed since the entry, and purported service, of the default judgment. ECF No. 27. On March 6, 2026, the Court entered an order granting Petitioner's motion to authorize attachment and execution. ECF No. 30.

For the reasons set out below, the entries of default, default judgment, and Section 1610(c) order all must be set aside.

## ARGUMENT

### I. The Entries of Default Should Be Set Aside and the Default Judgment Vacated.

The entries of default should be set aside under Rule 55(c) and the default judgment should be vacated under Rule 60(b). "[I]n default judgment cases, courts consider the same criteria when applying either standard." *Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003); *see also Flanagan v. Islamic Rep. of Iran*, 190 F. Supp. 3d 138, 150 (D.D.C. 2016). Those are the so-called *Keegel* factors: (1) whether the alleged defenses are meritorious, (2) whether the default was willful, and (3) whether a set-aside would prejudice plaintiff. *Id.* (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980); *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)). Here, each factor strongly supports finding good cause to set aside the entries of default and the default judgment.

In applying these factors, the Court should be guided by the "strong polic[y] favor[ing] resolution of disputes on their merits," which requires that "all doubts are [to be] resolved in favor of the party seeking relief," *i.e.*, opposing default. *Jackson*, 636 F.2d at 836; *Mohamad v. Rajoub*,

634 F.3d 604, 606 (D.C. Cir. 2011). *See also Pulliam v. Pulliam*, 478 F.2d 935, 936 (D.C. Cir. 1973) ("Since a resolution on the merits is preferable to a judgment by default, a court should liberally allow relief" from defaults and default judgments); *Hughes v. Holland,* 320 F.2d 781, 782 (D.C. Cir. 1963) ("[C]ourts should look with disfavor upon the allowance of judgments by default.").

The disfavor of default judgments is especially strong where, as here, the parties in default are foreign sovereigns. As the D.C. Circuit has emphasized, "[i]ntolerant adherence to default judgments against foreign states could adversely affect [the United States'] relations with other nations and undermine the State Department's continuing efforts to encourage foreign sovereigns generally to resolve disputes within the United States' legal framework." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987) (internal quotation marks and alterations omitted). Thus, "[w]hen a defendant foreign state has appeared and asserts legal defenses, *albeit after a default judgment has been entered*, it is important that those defenses be considered carefully and, if possible, that the dispute be resolved on the basis of all relevant legal arguments." *Id.* at 1552 (emphasis added). *See also FG Hemisphere Assocs. v. Democratic Republic of Congo*, 447 F.3d 835, 838 (D.C. Cir. 2006) (recognizing importance of "a foreign sovereign's interest—and [the court's] interest in protecting that interest—in being able to assert defenses based on its sovereign status" when applying Rule 60(b) to vacate default judgments).

Accordingly, there is a "strong presumption against the entry of default judgment against a foreign state that has appeared in the case and expressed a desire to contest the claims." *Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005). *See also Acree v. Iraq*, 658 F. Supp. 2d 124, 128, 130 (D.D.C. 2009) (setting aside entry of default "despite the plaintiffs' arguable showing that [foreign state defendant] willfully defaulted by failing to timely respond to the

complaint"); *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 82-85 (D.D.C. 2011) (setting aside clerk's default where foreign state defendant had a meritorious defense and there was no prejudice to plaintiff, even though default was willful); *Lawton v. Republic of Iraq*, No. 02-cv-0474, 2006 U.S. Dist. LEXIS 94335, at *8-12 (D.D.C. Dec. 6, 2006) (setting aside entry of default pursuant to Rule 55(c) and denying motion for default judgment); *Biton v. Palestinian Interim Self-Gov't Authority*, 233 F. Supp. 2d 31, 33-34 (D.D.C. 2002) (denying motion for entry of default judgment when defendant opposed the motion and filed a motion to set aside default).

### A. Respondents' Meritorious Defenses Warrant Setting Aside the Entries of Default and Render the Default Judgment Void.

The first *Keegel* factor—the presence of meritorious defenses—weighs strongly in favor of granting Respondents' requested relief. A defense is meritorious "if [it] contain[s] 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegel*, 627 F.2d at 374; *see Biton*, 233 F. Supp. 2d at 33 (finding jurisdictional defenses to qualify as "meritorious defense[s]" under *Keegel*). "[T]he proffered defense 'need not be … persuasive at this stage,' but must only 'give the factfinder some determination to make.'" *Shatsky*, 795 F. Supp. 2d at 84 (quoting *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)); *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (holding that a party seeking to set aside an entry of default "is not required to prove a defense, but only to assert a defense that it may prove at trial"); *Afr. Growth Corp. v. Republic of Angola*, No. (BAH) 17-2469, 2018 U.S. Dist. LEXIS 204152, at *20 (D.D.C. Dec. 3, 2018) (holding that "defenses are meritorious for purposes of a set-aside motion if they contain even a hint of a suggestion") (internal quotation marks omitted); *Redes Andinas de Comunicaciones S.R.L. v. Republic of Peru*, No. 22-3631 (RC), 2024 U.S. Dist. LEXIS 172039, at *20 (D.D.C. Sept. 24, 2024) (holding that defendant "must make only a modest showing").

Here, there is far more than a hint of a suggestion of complete defenses because (1) the entries of default were secured by Petitioner erroneously representing that service had been completed when Albania's Central Authority had merely received the service packages; (2) Petitioner failed to establish that Respondents had been properly served under Section 1608; and (3) the Court lacks personal jurisdiction over Respondents.[2] These meritorious defenses also render the default judgment void and warrant vacating it under Rule 60(b)(4). *See Montes v. Janitorial Partners, Inc.*, No. 13-cv-410 (RJL/RMM), 2019 U.S. Dist. LEXIS 133306, at *8 (D.D.C. June 2, 2019) ("a judgment is void where the requirements for effective service have not been satisfied" and where "the court lacks personal jurisdiction"); *see also Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013) (citing *Practical Concepts, Inc.*, 613 F. Supp. at 867 (D.D.C. 1985); RESTATEMENT (FIRST) OF JUDGMENTS §§ 5-7 (1942)).

1. <u>The Entries of Default Were Entered on a Factually Incorrect Representation and the Default Judgment Rested on Those Defective Entries.</u>

The entries of default should be set aside because they were entered on a factually incorrect premise: Petitioner's representation, dated February 27, 2024, that the Albanian "Central Authority [w]as [s]erved [p]ursuant to [the] Hague Convention on July 31, 2023," ECF No. 9 at 1. Rule 55(a) permits the Clerk to enter default only where a party's failure to plead or otherwise defend "is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The "Court has the authority to review the Clerk's entry of default and the obligation to vacate it if it was entered on a legally or factually incorrect basis." *Patel v. Socialist People's Libyan Arab Jamahiriya*, No. 06-0626 (PLF), 2007 U.S. Dist. LEXIS 109240, at *9 (D.D.C. Apr. 19, 2007). *See also Magee v. Amazon*

[2] Respondents expressly reserve the right to raise additional defenses, including, without limitation, defenses under Article V of the New York Convention.

*Corp., LLC*, No. 25-1241, 2026 U.S. Dist. LEXIS 124802, at *3 (E.D. La. May 18, 2026) (recommending denial of request for entry of default where "factual assertion underlying the request for default is incorrect").

That is what happened here. Petitioner incorrectly represented to the Clerk that service had been effected on Respondents on July 31, 2023. ECF No. 9 at 1. In fact, Petitioner knew that service had not been completed on that date, which was when the service packages had been received by Albanian Central Authority, the entity responsible for facilitating the future processing of service in accordance with local law. For instance:

- On October 10, 2023, Petitioner sent a letter to the Albanian Central Authority stating that "on July 31, 2023, we received a signed delivery confirmation from Federal Express for the hard copy materials," but that "*we have not received any other communication from you indicating that you have served these documents or even confirming receipt of our request*." ECF No. 7-4 at 2 (emphasis added).
- On November 2, 2023, the Albanian Central Authority informed Petitioner that the service packets had been forwarded "to the Court of First Instance of General Jurisdiction in Tirana … with the purpose of notifying and submitting the relevant documents" to Respondents under Albanian law, but not that service had occurred. ECF No. 6-1 at 2.
- Petitioner's subsequent January 23, 2024 letter to the Albanian Central Authority acknowledged that the November 2, 2023 correspondence had merely "advis[ed] that the service packets had been sent to the Court of First Instance of General Jurisdiction in Tirana for service upon the respondents," ECF No. 7-8 at 2, reflecting that service had not been completed on that date.

The bottom line is thus that the factual basis for the entries of default—that service occurred on July 31, 2023—is demonstrably false. The entries of default must therefore be set aside. *See Patel*, 2007 U.S. Dist. LEXIS 109240, at *9; *Magee*, 2026 U.S. Dist. LEXIS 124802, at *3

The default judgment must also be set aside pursuant to Rule 60(b)(6) as a necessary consequence. "Rule 55 sets forth a two-step process for a party seeking default judgment," and "[p]rior to obtaining a default judgment … there must be an entry of default as provided by Rule 55(a)." *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006). In short, "entry of default … is the necessary predicate to a grant of default judgment against any defendant." *Id.* Accordingly, where the underlying entry of default was improperly entered, as here, the default judgment based on that entry necessarily must be vacated as well. *See Haskins v. U.S. One Transp., LLC*, 755 F. Supp. 2d 126, 131 (D.D.C. 2010) ("concomitantly den[ying] … motion for default judgment" after granting motion to vacate entry of default); *see also Stuart-Findlay v. Bank of Am., Nat'l Ass'n*, 183 So. 3d 468, 470 (Fla. Dist. Ct. App. 2016) (holding "when … a default entered by the clerk … is erroneous and upon timely application by such party, the default and any final judgment consequent thereon should be set aside"); *Beztak Constr. Co. v. Kesling Carpets, Inc.*, 596 So. 2d 1297, 1297 (Fla. Dist. Ct. App. 1992) (holding when "the entry of the default by the clerk [is] erroneous … [e]ntry of the final default judgment based upon the clerk's default [is] likewise erroneous").

2. <u>Petitioner Failed to Establish that Respondents Were Served in Accordance with Section 1608 of the FSIA.</u>

Subsections 1608(a)(1) through (4) of the FSIA provide four hierarchical methods of service on foreign states, such as MIE and AKBN. The Supreme Court and this Circuit have been unequivocal that Section 1608(a) must be strictly followed, in the hierarchical order of the service methods established in that section. *Republic of Sudan v. Harrison*, 587 U.S. 1, 4 (2019) (Section

1608(a) "sets out in hierarchical order … four methods by which 'service … shall be made'" on a foreign state); *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994). Subsections 1608(b)(1) to (3), which apply to service on an agency or instrumentality of a foreign state, such as Albpetrol, likewise "set forth a hierarchical regime for the appropriate methods of service" on "an agency or instrumentality of a foreign state." *Estate of Hartwick v. Islamic Republic of Iran*, No. 18-1612 (CKK), 2020 U.S. Dist. LEXIS 262207, at *5 (D.D.C. Oct. 10, 2020).

Petitioner could not serve MIE and AKBN under Section 1608(a)(1), or Albpetrol under Section 1608(b)(1), because it does not have a "special arrangement" with any of them. ECF No. 14 at 13. As a result, Petitioner was required to attempt to serve Respondents under the Hague Convention as the "applicable international convention on service of judicial documents" between Albania and the United States for purposes of Sections 1608(a)(2) and 1608(b)(2), respectively. *Id.* at 12-13; *see also* ECF No. 13.

Specifically, Petitioner "attempted to serve [Respondents] consistent with Articles 2 through 7 of the Hague Service Convention." ECF No. 14 at 15. Those articles "'require that a plaintiff request service from a Central Authority designated by the receiving state and receive a certificate of service from the Central Authority' stating that service was proper." *Gosain v. Republic of India*, No. 18-2427 (TJK), 2026 U.S. Dist. LEXIS 57954, at *8 (D.D.C. Mar. 19, 2026) (quoting *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038 (D.C. Cir. 2022)). *See also Water Splash, Inc.*, 581 U.S. at 275. Thus, as this Court recently held in *Gosain*, "[m]erely requesting service from the foreign country's Central Authority—without receiving a certificate of service—is not valid service." 2026 U.S. Dist. LEXIS 57954, at *8 (citing *Saint-Gobain*, 23 F.4th at 1041-42).

Here, there is no dispute that Petitioner "did not receive [] certificate[s] of service from" the Albanian Central Authority. *Id*. *See* ECF No. 14 at 15-16. As the Court put it in *Gosain*, "[t]hat dooms [its] service argument, full stop." *Gosain*, 2026 U.S. Dist. LEXIS 57954, at *8. This requires setting aside both the entries of default and the default judgment. *See, e.g.*, *Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 320 (D.D.C. 2022) ("defects in Plaintiffs' attempts to serve Defendants are sufficient to preclude the exercise of personal jurisdiction"); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987) ("since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied").

3. The Court Lacks Personal Jurisdiction Over Respondents.

The judgment is also void—and the entry of default should be set aside—because the Court lacks personal jurisdiction over Respondents. *See Przewozman*, 628 F. Supp. 3d at 18, 20 (holding that "the Court cannot enter default judgment" because "the Court lacks personal jurisdiction over [foreign state] Defendants"); *Transaero, Inc.*, 30 F.3d at 154 (holding that the foreign state defendant "was not properly served," and thus the court "lacked personal jurisdiction, and the default judgment registered … was therefore void and unenforceable").

a. The Court Lacks Personal Jurisdiction over Respondents because Petitioner Did Not Properly Serve them under Section 1608.

Under Section 1330(b), personal jurisdiction over a foreign state like Respondents requires both subject matter jurisdiction and service of process. 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."). *See Port Authority GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012); *Price v.*

*Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89, 95 (D.C. Cir. 2002); *Roth v. Islamic Republic of Iran*, 651 F. Supp. 3d 65, 93 (D.D.C. 2023). Because there is no evidence that Petitioner served Respondents in accordance with the FSIA, *see supra* at Section I(A)(1), there is no personal jurisdiction over Respondents. *Id.*

Respondents note the Court considered that Petitioner "has shown that it has complied with its obligations under the Hague Service Convention such that the [C]ourt has personal jurisdiction over [them]," ECF No. 14 at 16, because it "has met the criteria for entry of a default judgment under Article 15(2)" of the Hague Convention. *Id.* at 14. However, Respondents respectfully observe that Article 15 does not establish the existence of personal jurisdiction based on service under Sections 1608(a)(2) and 1608(b)(2). While "Articles 15(1) and 15(2) govern the process for obtaining a *default judgment* … that standard has nothing to do with resolving a challenge to the Court's exercise of personal jurisdiction, or more specifically, determining whether service was valid." *Gosain*, 2026 U.S. Dist. LEXIS 57954, at *9 (emphasis in original).

b. The Court Lacks Personal Jurisdiction over Albpetrol because Albpetrol Does Not Have Sufficient Minimum Contacts with the United States.

The Court also lacks personal jurisdiction over Albpetrol because Petitioner has failed to establish that Albpetrol has sufficient minimum contacts with the United States such that it may be sued in this jurisdiction.

As an agency or instrumentality of Albania, ECF No. 29 at 5 n.1, Albpetrol is a "person" within the meaning of the Due Process Clause of the Fifth Amendment. *UAB Skyroad Leasing v. OJSC Tajik Air*, No. 21-56124, 2022 U.S. App. LEXIS 16977, at *2-3 (D.C. Cir. June 17, 2022) (per curiam) (finding a foreign sovereign "instrumentality … is protected by the Due Process Clause of the Fifth Amendment") (citing *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 301 (D.C. Cir. 2005)). Thus, "[t]he district court has personal jurisdiction only if, in

addition to 28 U.S.C. § 1330(b)'s requirements, the instrumentality has sufficient minimum contacts with the United States." *UAB Skyroad*, 2022 U.S. App. LEXIS 16977, at *3. *See Rusesabagina v. Republic of Rwanda*, No. 22-cv-469, 2023 U.S. Dist. LEXIS 44914, at *19 (D.D.C. Mar. 16, 2023); *Williams v. Romarm*, 756 F.3d 777, 783-84 (D.C. Cir. 2014) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Accordingly, for the Court to exercise personal jurisdiction over Albpetrol, that entity must "have certain minimum contacts with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316; *see also Mwani v. Bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

This is fatal to the exercise of personal jurisdiction over Albpetrol. Petitioner failed to allege any specific, particularized contacts between Albpetrol and the United States. *See UAB Skyroad Leasing v. OJSC Tajik Air*, No. 20-cv-00763, 2021 U.S. Dist. LEXIS 13872, at *42 (D.D.C. Jan. 26, 2021), *aff'd*, 2022 U.S. App. LEXIS 16977 ("Because [petitioner] makes no averment that [the instrumentality] has any contacts with the United States, the court concludes that it lacks personal jurisdiction over [the instrumentality]"); *Williams*, 756 F.3d at 785-86 (holding "due process will not permit the district court to exercise its jurisdiction over" a state-owned entity where plaintiff alleged no facts showing minimum contacts with the United States). Nowhere in the petition does Petitioner allege that Albpetrol conducted business in the United States, maintained property or assets in the United States, directed activities toward the United States, or had any other contacts with the U.S. forum. All of the underlying activities—the licensing agreements, the petroleum agreements, and oilfield development—are alleged to have taken place in Albania. *See* ECF No. 1 ¶¶ 19-31; ECF No. 1-2 ¶¶ 279-327; ECF No. 14 at 2-4.

### B. Respondents Did Not Willfully Default.

The second *Keegel* factor is also satisfied: Respondents did not willfully default. To the contrary, Respondents are fully committed to vindicating their rights in this litigation. *See Keegel*, 627 F.2d at 374 (finding set aside appropriate under the Rule 55(c) standard where the movant's conduct was not willful).

As the Court has noted, the "boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *Int'l Painters*, 288 F. Supp. 2d at 26. Thus, even when "service ultimately may have been effected," there is no willful default where a defendant "presents valid arguments in favor of his position [denying proper service]." *Luna v. Rambo*, 273 F.R.D. 346, 348 (D.D.C. Apr. 14, 2011). Consequently, "[a] Court cannot find that [a] Defendant willfully defaulted to answer a complaint that arguably was not properly served on him." *Id.* at 349. Thus, Respondents' arguments regarding service militate against finding that any default was willful. *See Biton*, 233 F. Supp. at 33 (stating that "[the Court's] duty to accord the defendants the benefit of the doubt … keeps [it] from finding defendants' default to have been willful"); *see also Capital Yacht Club v. Vessel Aviva*, 228 F.R.D. 389, 393 (D.D.C. 2005) (finding default was not willful and resolving all doubts in favor of defaulting party even where "defendant ha[d] not entirely accounted for his delay" and "ha[d] not produced any evidence corroborating his assertions").

Regardless, finding that Respondents had willfully defaulted (they did not), would not obviate the need to set aside the entries of default and default judgment in light of their meritorious defenses and the lack of prejudice to Petitioner. *See Haskins*, 755 F. Supp. 2d at 131 (finding that "although there is some evidence to suggest that [defendant's] failure to respond to the complaint was willful, this fact is counterbalanced by the fact that [defendant] has asserted a meritorious

defense and that plaintiff will not be prejudiced by vacating the entry of default against her"); *Afr. Growth Corp.*, 2018 U.S. Dist. LEXIS 204152, at *10 ("Although Angola's default was surely willful ... the Court finds that all other relevant factors weigh in favor of setting aside the entry of default against Angola"); *Acree*, 658 F. Supp. 2d at 130 ("In light of the established preference to avoid granting default judgment against foreign nations, and having found that the plaintiffs will not be prejudiced by a set aside of the entry of default and that Iraq has presented meritorious defenses, it is unnecessary to resolve the parties' dispute as to willfulness").

### C. Petitioner Will Not Be Prejudiced by Setting Aside the Defaults and Default Judgment.

The final *Keegel* factor, potential prejudice to Petitioner, also weighs in favor of Respondents. Permitting them the opportunity to defend themselves in this litigation imposes no cognizable prejudice to Petitioner. Indeed, the entries of default were obtained based on Petitioner's misrepresentation as to the status of service, *see supra* Section I(A)(1), so it cannot be prejudiced by those defaults and the default judgment upon which they were predicated, being set aside. Nor can there be prejudice because the default judgment is void. As demonstrated in Section I(A)(2) above, the Court lacks personal jurisdiction over Respondents. A judgment rendered in excess of a court's jurisdiction is void as a matter of law. *See Bell Helicopter Textron, Inc.*, 734 F.3d at 1181; *Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void."); *Salmeron v. District of Columbia*, 113 F. Supp. 3d 263, 266-267 (D.D.C. 2015) ("[I]t is uniformly held that a judgment is void where the requirements for effective service have not been satisfied").

## II. The Court's Section 1610(c) Order Should Be Vacated.

Since the entries of default and default judgment should be set aside for the reasons described above, the Court's Section 1610(c) order must *ipso facto* be vacated as well as it is based

on the existence of the default judgment. In that connection, Rule 60(b)(4) permits the Court to vacate an order where "the judgment is void." Here, once the Court vacates the default judgment as void, there will be no basis for an order permitting the "attachment and execution," 28 U.S.C. § 1610(c), of a vacated judgment.

The Court should also vacate the Section 1610(c) order pursuant to Rule 60(b)(1) because it erroneously determined that Section 1610(c)'s prerequisite—that "a reasonable period of time has elapsed following … the giving of any notice [of the default judgment] required under section 1608(e)," 28 U.S.C. § 1610(c)—was satisfied. That rule permits a court to relieve a party from a final judgment or order for "mistake." Fed. R. Civ. P. 60(b)(1). The term "mistake" encompasses "judicial errors of law." *Kemp v. United States*, 596 U.S. 528, 535, 539 (2022). As the Court recently explained, "[t]he ordinary meaning of the term 'mistake' in Rule 60(b)(1) includes a judge's legal errors … such as … the misapplication of controlling law to record facts." *Brooks v. Rosebar (In re Rosebar)*, 674 B.R. 810, 830 (D.D.C. 2025) (quoting *Kemp*, 596 U.S. at 534-35 & n.2).

Here, Respondents respectfully note that the Court mistakenly concluded that the required notice of the default judgment under Section 1608(e), which requires that a copy be served pursuant to Section 1608, was given to Respondents. ECF No. 29 at 5-8. However, Petitioner did not properly complete service of the default judgment under Sections 1608(a)(3) and 1608(b)(3)(B). Those methods are only available if "service cannot be made under paragraphs (1) or (2)" of Sections 1608(a) and (b), respectively. *See Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45, 47 (D.D.C. 2017) (observing that "service may be accomplished pursuant to § 1608(a)(3) only if service cannot be made pursuant to subsections (a)(1) and (a)(2)") (internal quotation marks and citation omitted); *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 32 (D.D.C.

2014) (observing that "[i]f a plaintiff is unable to effect service under the first or second method [of Section 1608(b)], the plaintiff may do so using a variety of methods" under § 1608(b)(3)). No showing was made that service could not be made under Sections 1608(a)(2) or 1608(b)(2).

As this Court has explained in regard to service under Section 1608(a)(4)—which contains language identical to Sections 1608(a)(3) and (b)(3)—"[t]he words 'cannot be made' indicate that a plaintiff must attempt to effect service under" the preceding paragraphs, "and some impediment must stand in the way of accomplishing service under" those provisions, "before progressing" to the next method. *Przewozman*, 628 F. Supp. 3d at 317. That is because, "without attempting service in a particular manner, a plaintiff cannot know whether service can be made in that manner or not. And the word 'cannot' connotes more than inexactitude or negligence; if service *can* be achieved under" the preceding paragraphs, "that is what the statute requires." *Id*. *See also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 603 (S.D.N.Y. 2016) ("before attempting service under § 1608(a)(3), Plaintiffs needed to exhaust § 1608(a)(2) service").

Here, Petitioner failed to make the required showing of an "impediment" to, or "exhaust[ion]" of, service under Sections 1608(a)(2) and (b)(2), before moving on to attempt service under Sections 1608(a)(3) and (b)(3). Though Petitioner transmitted the default judgment to Albania's Central Authority in accordance with Sections 1608(a)(2) and 1608(b)(2), it waited a mere *five weeks* before concluding that service could not be made thereunder. ECF Nos. 17 to 18-1. That period of time is insufficient. It is well recognized that service via a central authority under the Hague Convention can take months.[3] The facts that Albania's Central Authority did not

[3] *See, e.g.*, *STS Prods. v. Boss Sols. LLC*, No. H-19-4003, 2020 U.S. Dist. LEXIS 264287, at *11-12 (S.D. Tex. Jan. 21, 2020) (four to nine months for India); *Mayorga v. Ronaldo*, No. 2:19-cv-00168-JAD-CWH, 2019 U.S. Dist. LEXIS 60023, at *5-6 (D. Nev. Apr. 8, 2019) (six to twelve months for Italy); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563 (C.D. Cal. 2012) (four to six months for China); *Calista Enters. Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371,

"communicate" with Petitioner regarding its service attempt during those five weeks, *see* ECF No. 27-1 ¶ 4, and did not previously return certificates of service for the summons and petition, *see* ECF No. 29 at 6—a separate and independent procedure—cannot demonstrate an impediment to serving the default judgment via the Central Authority, nor that such an attempt was exhausted.

The absence of any compelling factual basis for concluding that service "could not be made" on Respondents under Sections 1608(a)(2) and (b)(2) therefore renders the purported service under Sections 1608(a)(3) and 1608(b)(3)(B) improper. *See Pablo Star Ltd.*, 170 F. Supp. 3d at 603 ("failure to exhaust service under § 1608(a)(2) renders the attempted § 1608(a)(3) service improper"); *Przewozman*, 628 F. Supp. 3d at 317 ("failure to follow the carefully delineated rules for serving a foreign state cannot be cured or excused without retracing the steps required under § 1608"). Accordingly, the Section 1610(c) order should be set aside.

**CONCLUSION**

For the foregoing reasons, the entries of default and default judgment should be set aside and the Section 1610(c) order vacated. Respondents should be permitted to move to dismiss the Petition within 14 days of this Court's order. *See* D.D.C. L. Cv. R. 7(g).

Dated: August 21, 2026

Respectfully submitted,

/s/ Andrew B. Loewenstein
Andrew B. Loewenstein (MA0018)
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-832-1000
aloewenstein@foleyhoag.com

1374 n.1 (D. Or. 2014) (six to eight months for Czech Republic); *Warren v. Jarrold*, No. 2:21-cv-11734, 2021 U.S. Dist. LEXIS 220137, at *5 (E.D. Mich. Nov. 15, 2021) (two to six months for France); *Broad v. Anlagenbau*, 10 P.3d 371, 374, 377 (Wash. 2000) (several months for Germany and Japan).

Nicholas M. Renzler (NR1608)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
212-812-0400
nrenzler@foleyhoag.com

*Counsel for Respondents*