**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OMNI BRIDGEWAY LIMITED,<br>as assignee for GBC Oil Company Ltd.,<br><br>Petitioner,<br>v.<br><br>THE MINISTRY OF INFRASTRUCTURE AND ENERGY OF THE REPUBLIC OF ALBANIA; THE NATIONAL AGENCY OF NATURAL RESOURCES OF THE REPUBLIC OF ALBANIA; and ALBPETROL SH.A.,<br><br>Respondents. | No. 1:23-cv-01938-LLA |

**PETITIONER OMNI BRIDGEWAY LIMITED'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO SET ASIDE THE ENTRIES OF DEFAULT, VACATE THE DEFAULT JUDGMENT, AND VACATE THE COURT'S SECTION 1610(C) ORDER**

Robert K. Kry
D.C. Bar # 490545
Jackson A. Myers
D.C. Bar # 1735365
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Petitioner*
*Omni Bridgeway Limited*

# TABLE OF CONTENTS

Page


INTRODUCTION ........ 1

BACKGROUND ........ 3

LEGAL STANDARDS ........ 7

ARGUMENT ........ 9

I. Respondents' Motion Is Untimely ........ 9

II. There Was No Misrepresentation in the Affidavit of Default ........ 12

A. The Affidavit of Default Was Accurate ........ 12

B. Any Defect in the Affidavit Is Not Grounds for Vacating the Judgment ........ 13

III. The Court Correctly Found Service and Personal Jurisdiction Based on Article 15(2) of the Hague Service Convention ........ 17

A. Omni Bridgeway Complied with Article 15(2) ........ 17

B. Omni Bridgeway's Compliance with Article 15(2) Established Both Service and Personal Jurisdiction ........ 20

IV. Minimum Contacts Are Not Required ........ 25

A. *Fuld* Abrogated the Minimum Contacts Standard ........ 26

B. Albpetrol Consented to Jurisdiction ........ 27

V. Omni Bridgeway Properly Served the Default Judgment Through the Clerk's Office ........ 28

CONCLUSION ........ 31

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Empire Surplus Lines Ins. Co. v. Uplift Elevator of NY Inc.*,
No. 20-cv-3246, 2021 WL 7709971 (S.D.N.Y. May 26, 2021) ....14

* *Archirodon Constr. (Overseas) Co. Ltd. v. Gen. Co. for Ports of Iraq*,
No. 22-cv-1571, 2024 WL 3844800 (D.D.C. Aug. 16, 2024) ....8, 17

*Artnet Worldwide Corp. Inc. v. Gruber*,
No. 21-cv-10459, 2023 WL 6390167 (S.D.N.Y. Oct. 2, 2023)....19

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*,
734 F.3d 1175 (D.C. Cir. 2013) ....8, 9

*Benship Int'l, Inc. v. Bangl. Agr. Dev. Corp.*,
No. 90-cv-5851, 1991 WL 710 (S.D.N.Y. Jan. 3, 1991) ....27

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025)....16

*BMO Harris Bank N.A. v. BT Auto Transp., LLC*,
No. 22-cv-298, 2023 WL 5736948 (W.D. Okla. Sept. 5, 2023)....14

*Box v. Dallas Mexican Consulate Gen.*,
487 F. App'x 880 (5th Cir. 2012) ....20, 24, 25

*Carvajal v. DEA*,
286 F.R.D. 23 (D.D.C. 2012)....9

*Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*,
125 F.4th 1000 (10th Cir. 2025) ....14, 16

*Collex, Inc. v. Walsh*,
74 F.R.D. 443 (E.D. Pa. 1977)....16

*Combs v. Nick Garin Trucking*,
825 F.2d 437 (D.C. Cir. 1987) ....7, 16

*Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A.*,
No. 19-cv-11654, 2020 WL 7261111 (S.D.N.Y. Dec. 10, 2020) ....27

* *Coney Island Auto Parts Unlimited, Inc. v. Burton*,
607 U.S. 155 (2026)....9, 11

* *Devas Multimedia Priv. Ltd. v. Antrix Corp. Ltd.*,
No. 20-36024, 2026 WL 2330570 (9th Cir. Aug. 12, 2026) ....26

*Dusenbery v. United States*,
534 U.S. 161 (2002) ........ 23

*Farris v. Rice*,
No. 05-cv-1975, 2006 WL 8435181 (D.D.C. Jan. 17, 2006) ........ 14

* *Flaherty v. Amigos del Mar Ltd.*,
180 F.4th 396 (1st Cir. 2026) ........ 11

* *Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) ........ 26

* *Gates v. Syrian Arab Republic*,
646 F.3d 1 (D.C. Cir. 2011) ........ 7, 8

*Gligorov v. Nation of Brunei*,
185 F.4th 1169 (D.C. Cir. 2026) ........ 26

*Gosain v. Republic of India*,
No. 18-cv-2427, 2026 WL 775828 (D.D.C. Mar. 19, 2026) ........ 24, 25

* *Jackson v. Beech*,
636 F.2d 831 (D.C. Cir. 1980) ........ 8, 15

*Jalloh v. Underwood*,
No. 16-cv-1613, 2024 WL 5264335 (D.D.C. Nov. 27, 2024) ........ 11

*Jones v. Falconwood Inc.*,
No. 23-cv-2490, 2026 WL 2137991 (D.D.C. July 24, 2026) ........ 30

*Kapar v. Islamic Republic of Iran*,
105 F. Supp. 3d 99 (D.D.C. 2015) ........ 9

*Karsner v. Lothian*,
532 F.3d 876 (D.C. Cir. 2008) ........ 7, 16

*Keegel v. Key West & Caribbean Trading Co.*,
627 F.2d 372 (D.C. Cir. 1980) ........ 8

*Kemp v. United States*,
596 U.S. 528 (2022) ........ 30

*Kiss Nail Prods., Inc. v. Shenzhen Jinri Elec. Appliance Co.*,
No. 18-cv-5625, 2020 WL 4679631 (E.D.N.Y. July 23, 2020) ........ 19

*Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*,
514 F. Supp. 3d 20 (D.D.C. 2020) ........ 20, 24

* *Lee Mem'l Hosp. v. Becerra*,
10 F.4th 859 (D.C. Cir. 2021)....7

*Leger v. Rivers Edge Treestands, Inc.*,
No. 13-cv-326, 2016 WL 909173 (E.D. Tex. Feb. 8, 2016)....19

*LeJacq Publ'g, Inc. v. Am. Soc'y of Contemp. Med., Surgery & Ophthalmology*,
No. 88-cv-7242, 1989 WL 37673 (S.D.N.Y. Apr. 11, 1989)....27

*Lindsayca USA, Inc. v. Petroleos de Venezuela, S.A.*,
No. 21-cv-37, 2022 WL 3588041 (S.D. Tex. Aug. 22, 2022)....20, 24

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023)....27

*Marschauser v. Travelers Indem. Co.*,
145 F.R.D. 605 (S.D. Fla. 1992)....19

*McDonough Power Equip., Inc. v. Greenwood*,
464 U.S. 548 (1984)....13

*Meta Platforms, Inc. v. Nguyen*,
No. 21-cv-5002, 2023 WL 8686924 (N.D. Cal. Nov. 21, 2023)....19, 23

*Micula v. Gov't of Romania*,
101 F.4th 47 (D.C. Cir. 2024)....7

*Mwani v. bin Laden*,
417 F.3d 1 (D.C. Cir. 2005)....21

*Owens v. Republic of Sudan*,
826 F. Supp. 2d 128 (D.D.C. 2011)....28

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017)....9

*People for Ethical Treatment of Animals v. HHS*,
901 F.3d 343 (D.C. Cir. 2018)....16

*RDP Techs., Inc. v. Cambi AS*,
800 F. Supp. 2d 127 (D.D.C. 2011)....23

* *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*,
439 F.2d 1268 (2d Cir. 1971)....27

*In re Rosebar*,
674 B.R. 810 (D.D.C. 2025)....30

*Rowe v. PChange LLC*,
No. 22-cv-3098, 2025 WL 2803859 (D.D.C. Oct. 2, 2025) ....................................................30

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
23 F.4th 1036 (D.C. Cir. 2022) ..............................................................................................25

*Salazar ex rel. Salazar v. District of Columbia*,
633 F.3d 1110 (D.C. Cir. 2011) ..............................................................................................10

*Sardaliyev v. Casim*,
No. 19-cv-78, 2020 WL 1503377 (E.D. Cal. Mar. 30, 2020) ....................................................14

* *Scheck v. Republic of Argentina*,
No. 10-cv-5167, 2011 WL 2118795 (S.D.N.Y. May 23, 2011) ............................20, 22, 24, 25

*Silverman v. Modulgranito Iberico, S.A.*,
No. 89-cv-432, 1990 WL 481934 (D.D.C. Apr. 30, 1990) ......................................................19

*Stonehill v. IRS*,
No. 06-cv-599, 2024 WL 4679128 (D.D.C. Nov. 5, 2024) ......................................................16

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
487 F.3d 928 (D.C. Cir. 2007) ................................................................................................17

*THEC Int'l–Hamdard Cordova Grp.–Nazari Constr. Co., Ltd. Joint Venture v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1 (D.D.C. 2018) ..........................................................9

*TMR Energy Ltd. v. State Prop. Fund of Ukr.*,
411 F.3d 296 (D.C. Cir. 2005) ................................................................................................25

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
30 F.3d 148 (D.C. Cir. 1994) ..................................................................................................13

*Trapote v. Bolivarian Republic of Venezuela*,
729 F. Supp. 3d 34 (D.D.C. 2024) ..........................................................................................30

*United States v. Manos*,
56 F.R.D. 655 (S.D. Ohio 1972) ............................................................................................16

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) ..............................................................................................................24

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) ..............................................................................................................18

## CONSTITUTIONAL PROVISIONS, TREATY PROVISIONS, STATUTES, AND RULES


U.S. Const. amend. V ........ 2, 25, 26

U.S. Const. amend. XIV ........ 26

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361:

Art. 3, 20 U.S.T. 362 ........ 3, 18, 21
Art. 5, 20 U.S.T. 362 ........ 3, 18, 21, 25
Art. 6, 20 U.S.T. 363 ........ 3, 18, 21, 25
Art. 8, 20 U.S.T. 363 ........ 21
Art. 10, 20 U.S.T. 363 ........ 21
Art. 15(1), 20 U.S.T. 364 ........ 24, 25
* Art. 15(2), 20 U.S.T. 364 ........ *passim*
Proclamation, 20 U.S.T. 372 ........ 22
Designations and Declarations, 20 U.S.T. 373 ........ 5, 18, 24

Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891 (1976) (codified as amended at 28 U.S.C. §§ 1330, 1602 *et seq.*):

28 U.S.C. § 1330(b) ........ 5, 21, 26
28 U.S.C. § 1608(a) ........ 13
28 U.S.C. § 1608(a)(2) ........ 3, 21, 22, 28
28 U.S.C. § 1608(a)(3) ........ 6, 28
28 U.S.C. § 1608(b)(2) ........ 3, 21
28 U.S.C. § 1608(b)(3)(B) ........ 6
28 U.S.C. § 1608(d) ........ 15
28 U.S.C. § 1608(e) ........ 6, 21, 28
28 U.S.C. § 1610(c) ........ *passim*

9 U.S.C. § 6 ........ 17

Federal Rules of Civil Procedure:

Fed. R. Civ. P. 4(e)(2)(B) ........ 23
Fed. R. Civ. P. 5(b)(2)(C) ........ 23
Fed. R. Civ. P. 12(b)(2) ........ 24
Fed. R. Civ. P. 55 ........ 16
Fed. R. Civ. P. 55(a) ........ 12, 14, 17
Fed. R. Civ. P. 55(b)(2) ........ 16
Fed. R. Civ. P. 55(c) ........ 8, 15
Fed. R. Civ. P. 60(b) ........ *passim*
Fed. R. Civ. P. 60(b)(1) ........ 30
Fed. R. Civ. P. 60(b)(3) ........ 16
* Fed. R. Civ. P. 60(b)(4) ........ *passim*

Fed. R. Civ. P. 60(b)(6) .......... 9, 16
Fed. R. Civ. P. 60(c) .......... 9
Fed. R. Civ. P. 60(c)(1) .......... 9, 16
Fed. R. Civ. P. 61 .......... 13

Local Civ. R. 7(b) (D.D.C.) .......... 17

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1487 (1976) .......... 22

S. Rep. No. 94-1310 (1976) .......... 22

Brief for United States, *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, No. 23-1201 (U.S. filed Dec. 11, 2024) .......... 27

William S. Dodge, *Fuld's Implications for the FSIA (and Other Federal Statutes)*, Transnat'l Litig. Blog (July 10, 2025) .......... 26

Hague Conference on Private International Law, *Service Handbook: Practical Handbook on the Operation of the 1965 Service Convention* (5th ed. 2025) .......... 19

Sarah E. Kramer, *International Service of Process: A Guide for Judges* (Fed. Jud. Ctr. 2021) .......... 19

10A Wright & Miller, *Federal Practice and Procedure* § 2682 (4th ed. rev. 2026) .......... 21

11 Wright & Miller, *Federal Practice and Procedure* § 2858 (3d ed. rev. 2026) .......... 30

11 Wright & Miller, *Federal Practice and Procedure* § 2866 (3d ed. rev. 2026) .......... 10

Petitioner Omni Bridgeway Limited ("Omni Bridgeway"), in its capacity as appointed agent and investment manager for Omni Bridgeway (Fund 2) Pty. Ltd. and Omni Bridgeway (Fund 3) Pty. Ltd., and as assignee for GBC Oil Company Ltd. ("GBC Oil"), respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion To Set Aside the Entries of Default, Vacate the Default Judgment, and Vacate the Court's Section 1610(c) Order filed by Respondents The Ministry of Infrastructure and Energy of the Republic of Albania ("MIE"), The National Agency of Natural Resources of the Republic of Albania ("AKBN"), and Albpetrol Sh.A. ("Albpetrol"), on August 21, 2026 (Dkt. 34).

**INTRODUCTION**

Omni Bridgeway brought this proceeding to recognize and enforce a $13 million arbitral award against Respondents MIE, AKBN, and Albpetrol on July 5, 2023. Because Albania is a party to the Hague Service Convention, Omni Bridgeway served the petition by delivering a copy to Albania's Central Authority – its Ministry of Justice – on July 31, 2023. The Ministry was supposed to serve the papers on Respondents and provide a certificate reflecting that service, but it never did so. Even today – more than ***three years*** after Omni Bridgeway furnished the petition – the Ministry ***still*** has not served it on Respondents. That failure is no surprise: It is the predictable consequence of a service mechanism that relies on a foreign government's own authorities to serve process seeking to hold that foreign government liable for an unpaid award.

Fortunately, the Hague Service Convention provides a safety valve for precisely this scenario. Under Article 15(2), if "a period of time of not less than six months . . . has elapsed since the date of the transmission of the document" to the Central Authority, and "no certificate of any kind has been received," a court in the sending state "may give judgment" against the respondents. Omni Bridgeway invoked that procedure here: After receiving no certificate of any kind from the Ministry for over nine months, it moved for a default judgment. On February

14, 2025, this Court granted that motion in an opinion that thoroughly analyzed Omni Bridgeway's compliance with Article 15(2) and found it sufficient in every respect.

Now, more than ***eighteen months*** after this Court entered judgment, Respondents have belatedly shown up to contest the proceedings. They identify no substantive defense on the merits. Instead, they seek to set aside the default judgment based solely on procedural objections. All of their arguments are baseless.

First, Respondents complain that Omni Bridgeway incorrectly stated in its affidavit seeking a clerk's entry of default that it had served Respondents on July 31, 2023, when that was actually the date it delivered the papers to the Ministry of Justice. But Omni Bridgeway's affidavit was entirely accurate: The affidavit states that Omni Bridgeway served the "Central Authority" on July 31, 2023. That was true, even if it was only one step in the process of serving Respondents under the Hague Service Convention.

Second, Respondents complain that Omni Bridgeway's compliance with Article 15(2) was not sufficient to establish service or personal jurisdiction. This Court already held the opposite. That holding was correct. Respondents' theory would render Article 15(2) a dead letter: Service and personal jurisdiction are ***always*** required to enter a default judgment, so if Article 15(2) does not supply them, no plaintiff could ever invoke that provision.

Finally, Respondents' argument that Albpetrol lacks minimum contacts ignores recent Supreme Court authority holding that no such contacts are required under the Fifth Amendment. And their complaint that Omni Bridgeway did not wait long enough before serving the default judgment through the Clerk's office ignores this Court's considered finding to the contrary.

The Court should accordingly deny the motion in all respects.

## BACKGROUND

This dispute arises out of agreements between GBC Oil and two Albanian agencies to develop oilfields in Albania. In 2007, GBC Oil acquired rights to develop the oilfields under three License Agreements with the MIE's predecessor and AKBN. Dkt. 1 ¶¶ 19-23; Dkts. 1-4, 1-5, 1-6. The License Agreements each contain an arbitration clause stating that disputes "shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce." Dkts. 1-4, 1-5, 1-6 § 25.3(a). After Respondents failed to pay certain amounts due, GBC Oil brought an arbitration against them. The tribunal issued an Award for nearly $13 million in damages and costs. Dkt. 1 ¶¶ 37-49; Dkt. 1-2. GBC Oil subsequently assigned its rights under the Award to Omni Bridgeway. Dkt. 1 ¶ 51; Dkt. 1-11.

On July 5, 2023, Omni Bridgeway commenced this proceeding to recognize and enforce the Award. Dkt. 1. Because Respondents are Albanian state entities and Albania has acceded to the Hague Service Convention, the Foreign Sovereign Immunities Act ("FSIA") required Omni Bridgeway to serve Respondents pursuant to that Convention. 28 U.S.C. § 1608(a)(2), (b)(2); *see* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361 (Kry Decl. Ex. K); Kry Decl. Ex. L (status table). The Hague Service Convention requires a party to deliver copies of the service papers to the foreign state's "Central Authority" – in this case, Albania's Ministry of Justice. Hague Service Convention art. 3, 20 U.S.T. at 362; Kry Decl. Ex. M (Albania country information). The Central Authority must then serve the documents on the respondents under local law and provide a certificate reflecting that service. Hague Service Convention arts. 5 & 6, 20 U.S.T. at 362-63.

Accordingly, on July 24 or 25, 2023, Omni Bridgeway sent copies of its petition and all supporting documents to Albania's Ministry of Justice by FedEx. Kry Decl. Ex. A ¶ 3 (Dkt. 7).

Omni Bridgeway sent the Ministry a courtesy copy by email the same day. *Id.* ¶4. FedEx reported that the materials were delivered to the Ministry on July 31, 2023. *Id.* ¶5 & Ex. C. On October 10, 2023, Omni Bridgeway sent a follow-up letter by FedEx and email, asking for a status update and requesting certificates of service. *Id.* ¶¶6-8.

On November 2, 2023, the Ministry of Justice finally responded, stating that it had received the materials and sent them to a local court for service. Kry Decl. Ex. A ¶9 & Ex. G (Dkt. 7). Omni Bridgeway followed up again on January 23, 2024, sending another letter by FedEx and email requesting a certificate of service and warning that Respondents would be deemed in default if the Ministry failed to effect service within six months of the original request. *Id.* ¶¶10-12. The Ministry still failed to provide any certificate of service.

At that point, Omni Bridgeway turned to Article 15(2) of the Hague Service Convention. That section provides:

> Each contracting State shall be free to declare that the judge . . . may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled—
>
> (a) the document was transmitted by one of the methods provided for in this Convention,
>
> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Service Convention art. 15(2), 20 U.S.T. at 364 (Kry Decl. Ex. K). The United States exercised that authority when it ratified the Convention, declaring: "In accordance with the second paragraph of Article 15, . . . the judge may . . . give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and

(c) of the second paragraph of Article 15 are fulfilled." Designations and Declarations ¶3, 20 U.S.T. at 373 (Kry Decl. Ex. K).

Consistent with that provision, on February 27, 2024 – nearly seven months after delivering the petition to Albania's Ministry of Justice – Omni Bridgeway filed an affidavit seeking an entry of default from this Court's Clerk. Kry Decl. Ex. B (Dkt. 9). This Court's one-page form affidavit for seeking entries of default is not designed with Article 15(2) in mind, so Omni Bridgeway manually added a notation indicating that Albania's Central Authority had been served pursuant to the Hague Service Convention on July 31, 2023. *Id.*

The Clerk promptly entered defaults on February 29 and March 4, 2024. Dkts. 10 & 11. On March 10, 2024, Omni Bridgeway sent a copy of the applicable entry of default, petition, and summons to each Respondent directly by FedEx. Kry Decl. Ex. C ¶¶2-6 (Dkt. 12).

On April 24, 2024 – nearly nine months after Omni Bridgeway delivered the service papers to Albania's Ministry of Justice – the Ministry still had not returned a certificate of service or any other certificate. Kry Decl. Ex. E ¶4 (Dkt. 13-1). Omni Bridgeway therefore moved for a default judgment under Article 15(2). Kry Decl. Ex. D (Dkt. 13). Omni Bridgeway served the motion directly on each Respondent by FedEx. *Id.* at 4.

This Court granted the motion on February 14, 2025. Dkt. 14. The Court acknowledged that, before entering a default judgment, a court "must . . . assess whether it has personal jurisdiction over the defendants" and that personal jurisdiction depends on whether " 'service has been made' properly." *Id.* at 12 (quoting 28 U.S.C. § 1330(b)). The Court found those conditions satisfied because Omni Bridgeway "properly served Defendants consistent with the Hague Service Convention and, by extension, the FSIA." *Id.* at 14.

The Court concluded that "Omni Bridgeway has satisfied each of Article 15(2)'s criteria." Dkt. 14 at 15. "Specifically, [Omni Bridgeway] transmitted the relevant documents to Albania's Central Authority, roughly eighteen months have elapsed between its transmission and the date of this opinion, but Omni Bridgeway has not received a certificate of service despite making 'every reasonable effort' to obtain one." *Id.* at 15-16. "Indeed, Omni Bridgeway has mailed and emailed the documents to Albania's central authority numerous times, but it has not been provided a certificate of service or any other form of confirmation of service." *Id.* at 16. Accordingly, "Omni Bridgeway has shown that it has complied with its obligations under the Hague Service Convention such that the court has personal jurisdiction over Defendants." *Id.* The Court entered judgment the same day. Dkt. 15.

Omni Bridgeway then served Respondents with the default judgment as required by 28 U.S.C. § 1608(e). Once again, Omni Bridgeway attempted service under the Hague Service Convention by delivering copies to Albania's Ministry of Justice on March 4, 2025. Kry Decl. Ex. F ¶¶ 2-3 & Ex. B (Dkt. 16). The Ministry provided no certificate of service and did not respond to the request in any manner. Kry Decl. Ex. G ¶ 2 (Dkt. 26). Accordingly, five weeks later, on April 9, 2025, Omni Bridgeway served Respondents by mail through the Court Clerk's office instead under 28 U.S.C. § 1608(a)(3) and (b)(3)(B). *Id.* ¶¶ 3-4.

On August 20, 2025, Omni Bridgeway filed a motion under 28 U.S.C. § 1610(c) for permission to begin attachment and execution efforts, and served the motion on each Respondent directly by mail. Kry Decl. Ex. H at 3 (Dkt. 27). On March 6, 2026, this Court granted that motion. Dkt. 29. The Court found that Omni Bridgeway's service of the default judgment complied with the FSIA. *Id.* at 4-8. "Given the Ministry of Justice's lack of response . . . and its failure to respond to Omni Bridgeway's attempts at service before default judgment was

entered," "Omni Bridgeway reasonably concluded that service could not be made" under the Hague Service Convention before serving the papers through the Clerk's office instead. *Id.* at 6.

On August 21, 2026 – over ***eighteen months*** after this Court entered judgment – Respondents belatedly appeared in this action and moved to set aside the entries of default, the default judgment, and the Section 1610(c) order. Dkt. 34. Meanwhile, Albania's Ministry of Justice ***still*** has not served the petition on Respondents despite the passage of more than ***three years and one month (1,145 days)*** since it received that document. Kry Decl. ¶22. And the Ministry has not served the default judgment on Respondents despite the passage of more than ***one year and six months (563 days)*** since it received that document. *Id.* ¶23.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b) sets forth the six exclusive circumstances in which a court "may relieve a party . . . from a final judgment." Fed. R. Civ. P. 60(b). "[T]he party seeking to invoke [Rule 60(b)] bears the burden of establishing that its prerequisites are satisfied." *Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011).

One circumstance where Rule 60(b) applies is where "the judgment is void." Fed. R. Civ. P. 60(b)(4). "A judgment is 'not void . . . simply because it is or may have been erroneous.'" *Micula v. Gov't of Romania*, 101 F.4th 47, 51 (D.C. Cir. 2024). Instead, "the rendering court [must have been] powerless to enter it." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). There must be some "fundamental infirmity." *Lee Mem'l Hosp. v. Becerra*, 10 F.4th 859, 863 (D.C. Cir. 2021). A lack of jurisdiction may qualify. *Id.* at 863-64. And "since service of process is the means by which a court asserts jurisdiction," "a judgment is void where the requirements for effective service have not been satisfied." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987). But "the list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *Lee Mem'l Hosp.*, 10 F.4th at 863.

Rule 55(c) sets forth a different, more liberal standard for vacating a clerk's entry of default: "The court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The D.C. Circuit has interpreted that "good cause" standard liberally and considers whether "(1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel v. Key West & Caribbean Trading Co*., 627 F.2d 372, 373 (D.C. Cir. 1980). That "good cause" standard applies only to ***entries of default***, not default judgments: The latter are governed instead by Rule 60(b). *See* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."). Thus, while "[a] default can be set aside under rule 55(c) for 'good cause shown,' . . . ***a default that has become final as a judgment can be set aside only under the stricter rule 60(b) standards***." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) (emphasis added).

Respondents urge the Court to apply the *Keegel* factors to the default judgment anyway, claiming they need only show " 'a ***hint of a suggestion***' which, proven at trial, would constitute a complete defense." Resp. Mem. at 5-7 (Dkt. 34-1) (quoting *Keegel*, 627 F.2d at 374) (emphasis added). That is not the correct standard. Again, "the party seeking to invoke [Rule 60(b)] bears the burden of establishing that its prerequisites are satisfied." *Gates*, 646 F.3d at 5. If Respondents want relief on the theory that the judgment is "void" under Rule 60(b)(4), they must show that the judgment is ***actually void*** – not merely "a hint of a suggestion" of potential voidness. *See, e.g.*, *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1180-82 (D.C. Cir. 2013) (applying *de novo* analysis); *Archirodon Constr. (Overseas) Co. Ltd. v. Gen. Co. for Ports of Iraq*, No. 22-cv-1571, 2024 WL 3844800, at *6-7 (D.D.C. Aug. 16, 2024) (same). Even for foreign sovereigns, "the general policy favoring vacatur, by itself, cannot control the resolution of [a] Rule 60(b) motion" – otherwise that policy would "render the

specific authorization of default judgments in the FSIA a nullity." *Owens v. Republic of Sudan*, 864 F.3d 751, 820 (D.C. Cir. 2017), *vacated on other grounds*, 590 U.S. 418 (2020).

Nearly every case Respondents cite for the relevant legal standards concerns the standards for setting aside an ***entry of default*** where no default judgment has been entered. Resp. Mem. at 5-7. That analysis – untethered to Rule 60(b)'s actual text – is no substitute for what the rule requires. Respondents must show that they ***actually satisfy*** the requirements of Rule 60(b).

## ARGUMENT

### I. RESPONDENTS' MOTION IS UNTIMELY

The Court should deny Respondents' Rule 60(b) motion at the outset because Respondents waited too long to file it. Under Rule 60(c), "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment." Fed. R. Civ. P. 60(c)(1). Formerly, this Circuit held that the "reasonable time" standard did not apply to motions claiming voidness under Rule 60(b)(4). *Bell Helicopter*, 734 F.3d at 1179-80. As a result, many cases have entertained Rule 60(b)(4) motions filed long after the judgment. But those days are over. In *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155 (2026), the Supreme Court overruled *Bell Helicopter* and held that Rule 60(b)(4) motions are subject to Rule 60(c)'s "reasonable time" standard too. *Id.* at 162.

Respondents do not meet that standard here. Respondents waited ***eighteen months*** after the Court entered judgment to file their motion to vacate. Dkt. 15; Dkt. 34. That egregious delay far exceeds any standard of reasonableness. "In this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than ***three months*** after judgment." *Carvajal v. DEA*, 286 F.R.D. 23, 26 (D.D.C. 2012) (emphasis added); *see also THEC Int'l–Hamdard Cordova Grp.–Nazari Constr. Co., Ltd. Joint Venture v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1, 9 (D.D.C. 2018) (same); *Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 105

(D.D.C. 2015) (same). There is no basis for a longer presumptive limit for motions under Rule 60(b)(4). Respondents exceeded that three-month benchmark by a ***factor of six***.

Nothing about the particular facts of this case renders Respondents' eighteen-month delay reasonable. Courts consider several factors, including whether there was some good reason for the delay and the prejudice to the opposing party. *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1118 n.5 (D.C. Cir. 2011); 11 Wright & Miller, *Federal Practice and Procedure* § 2866 (3d ed. rev. 2026). Those factors favor Omni Bridgeway here.

Respondents have no good reason for their delay. They have had actual notice of this case for years. The Albanian government learned about the proceeding in July 2023, when Omni Bridgeway delivered the petition to Albania's Ministry of Justice, which confirmed receipt. Kry Decl. Ex. A ¶¶ 3-9 (Dkt. 7). Omni Bridgeway sent the petition and clerk's entry of default directly to each Respondent in March 2024. Kry Decl. Ex. C ¶¶ 2-6 (Dkt. 12). Omni Bridgeway sent its default judgment motion directly to each Respondent in April 2024. Kry Decl. Ex. D at 4 (Dkt. 13). Omni Bridgeway sent the default judgment itself to Albania's Ministry of Justice in March 2025. Kry Decl. Ex. F ¶¶ 2-3 (Dkt. 16). This Court's Clerk sent the default judgment to Albania's Minister for Europe and Foreign Affairs and to each Respondent directly in April 2025. Kry Decl. Ex. G ¶¶ 2-4 (Dkt. 26). And Omni Bridgeway sent its Section 1610(c) motion seeking to begin attachment and execution efforts to each Respondent directly in August 2025. Kry Decl. Ex. H at 3 (Dkt. 27). Respondents have thus had actual knowledge for ***over a year*** about not only Omni Bridgeway's judgment but also its imminent plans to ***enforce*** that judgment. Tellingly, Respondents nowhere even ***claim*** lack of knowledge, even though they "bear[] the burden of demonstrating that [they] satisf[y] [Rule 60(b)'s] prerequisites . . .

including the reasonable-time requirement." *Jalloh v. Underwood*, No. 16-cv-1613, 2024 WL 5264335, at *3 (D.D.C. Nov. 27, 2024). That silence is deafening.

Respondents' only apparent justification for their delay is that they believed (incorrectly) that they had grounds for challenging service. Resp. Mem. at 15-16. That theory does not explain why Respondents waited eighteen months to ***raise*** that challenge. In *Flaherty v. Amigos del Mar Ltd.*, 180 F.4th 396 (1st Cir. 2026), for example, the First Circuit found a two-year delay unreasonable even though "counsel advised [the defendant] that the U.S. courts had no jurisdiction." *Id.* at 400. "[Defendant] does not explain why, ***after*** the district court had found jurisdiction and notified [it] of the same, [it] thought it unnecessary to appear to dispute the court's finding for over two years." *Id.* The same reasoning applies here. Respondents' excuse, if valid, would permit a party to challenge service of process at ***any*** time – the precise rule *Coney Island* rejected. 607 U.S. at 162. Far from justifying their delay, Respondents' argument confirms they acted intentionally in an effort to avoid participating in this proceeding.

Respondents' decision to wait in the wings has caused substantial prejudice to both Omni Bridgeway and the Court. In reliance on the finality of the judgment, Omni Bridgeway spent considerable time serving the default judgment, first under the Hague Service Convention and then through the Clerk's office. Kry Decl. Ex. F ¶¶2-3 (Dkt. 16); Kry Decl. Ex. G ¶¶2-4 (Dkt. 26). Omni Bridgeway spent more time preparing and filing its Section 1610(c) motion. Dkt. 27. ***This Court*** then devoted considerable judicial resources to drafting a thoroughly reasoned opinion on the Section 1610(c) motion. Dkt. 29.

Omni Bridgeway then registered the judgment in New York. Kry Decl. ¶19. It issued post-judgment subpoenas to numerous third parties seeking information about Respondents'

assets and commercial activities. Kry Decl. ¶20. And it engaged in extensive correspondence and several meet-and-confer calls concerning those subpoenas. Kry Decl. ¶21.

Respondents now seek to unwind all of those proceedings and render Omni Bridgeway's and this Court's efforts a complete waste of time. That is the precise scenario the "reasonable time" standard is designed to avoid. The Court should deny Respondents' motion as untimely.

## II. THERE WAS NO MISREPRESENTATION IN THE AFFIDAVIT OF DEFAULT

Respondents' arguments also fail on the merits. Respondents first assert that Omni Bridgeway misrepresented the status of service in its affidavit seeking a clerk's entry of default under Rule 55(a). Resp. Mem. at 8-10. But Omni Bridgeway's affidavit was entirely accurate, and any defect does not justify relief under Rule 60(b).

### A. The Affidavit of Default Was Accurate

Respondents accuse Omni Bridgeway of "incorrectly represent[ing]" in its affidavit of default that "service had been effected ***on Respondents*** on July 31, 2023." Resp. Mem. at 9 (emphasis added). But that is not what the affidavit says. Omni Bridgeway told the Clerk that Albania's "Central Authority" was served with the petition on July 31, 2023. Kry Decl. Ex. B (Dkt. 9). That statement was accurate. *See* Kry Decl. Ex. A ¶5 (Dkt. 7) ("On July 31, 2023, FedEx reported that it had delivered the hard copy materials to the Ministry in Tirana, Albania earlier that day."). Respondents nowhere dispute that Omni Bridgeway did, in fact, deliver the petition to Albania's Ministry of Justice on that date.[1]

[1] Respondents repeatedly quote Omni Bridgeway's affidavit as stating that Albania's "Central Authority [w]as [s]erved [p]ursuant to Hague Convention on July 31, 2023." Resp. Mem. at 3, 8 (alterations in memorandum). For candor's sake, Omni Bridgeway notes that what the affidavit actually said was "Central Authority Served Pursuant to Hague Convention on July 31, 2023" – the word "was" was implied rather than express. Kry Decl. Ex. B (Dkt. 9). Respondents' rendering was certainly Omni Bridgeway's intended meaning, and the fact that Respondents evidently read the statement that way confirms it is the most natural reading too.

Nor was there anything misleading about the affidavit. This Court's affidavit of default is a one-page form document that does not contemplate any legal argument or evidentiary analysis. Kry Decl. Ex. B (Dkt. 9). It requires only the date and method of service and a certification that the time for responding has expired. *Id.* Omni Bridgeway planned to seek a default judgment under Article 15(2), so the date the Central Authority received the papers was the one that mattered – that was when the six-month clock started to run. In those circumstances, it was not misleading to list ***that*** date on the form and describe it accurately, without listing the other steps Omni Bridgeway took to effect service under Article 15(2).

Finally, if there was any ambiguity in the affidavit, the surrounding filings resolved it. Just three weeks earlier, Omni Bridgeway had filed a return of service that clearly explained that it had delivered the petition to ***Albania's Ministry of Justice*** on July 31, 2023; that it had repeatedly followed up to encourage the Ministry to serve the petition on Respondents; and that it had warned the Ministry that Respondents could be "deemed in default if the Ministry failed to effect service within six months of [the] original request." Kry Decl. Ex. A ¶¶3-13 (Dkt. 7). That context eliminated any possible ambiguity in the affidavit.

**B. Any Defect in the Affidavit Is Not Grounds for Vacating the Judgment**

Any shortcoming in the affidavit of default does not entitle Respondents to relief.

1. Any defect was harmless. Rule 61, titled "Harmless Error," provides that, "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. That rule requires courts to "ignore errors that do not affect the essential fairness of the [proceeding]." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). Section 1608(a) requires strict compliance for ***service of process*** on foreign sovereigns. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153-54 (D.C. Cir. 1994). But no statute abrogates Rule 61's harmless error standard for mere

failures to comply with the procedures for obtaining a clerk's entry of default under Rule 55(a). Courts thus disregard harmless errors involving entries of default. *See, e.g.*, *Am. Empire Surplus Lines Ins. Co. v. Uplift Elevator of NY Inc.*, No. 20-cv-3246, 2021 WL 7709971, at *5 (S.D.N.Y. May 26, 2021), *adopted*, 2023 WL 1466625 (S.D.N.Y. Feb. 1, 2023); *BMO Harris Bank N.A. v. BT Auto Transp., LLC*, No. 22-cv-298, 2023 WL 5736948, at *1 n.5 (W.D. Okla. Sept. 5, 2023); *Sardaliyev v. Casim*, No. 19-cv-78, 2020 WL 1503377, at *1 n.1 (E.D. Cal. Mar. 30, 2020); *cf. Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1014 (10th Cir. 2025).

Those principles apply here. Respondents essentially complain that Omni Bridgeway should have explained in its one-page form affidavit that delivering the petition to Albania's Central Authority was only one step in the process of serving Respondents under the Hague Service Convention, and that Omni Bridgeway should have addressed the other steps too. But that explanation would have changed nothing. Under Rule 55(a), the Clerk "***must*** enter the party's default" if a party's "fail[ure] to plead or otherwise defend . . . is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a) (emphasis added). Omni Bridgeway was ***entitled*** to an entry of default because, as this Court later found, it met all the requirements of Article 15(2). Dkt. 14 at 12-16. Indeed, Omni Bridgeway had already ***shown*** that it met all those requirements in the return of service it filed under penalty of perjury three weeks before its affidavit of default. Kry Decl. Ex. A ¶¶3-13 (Dkt. 7). Repeating those details in the affidavit would only have given the Clerk's office ***even more*** reason to do exactly what it did: enter Respondents' defaults.

The purpose of an entry of default is to give the respondent an "opportunity to move the court to set aside the default before the court enters default judgment." *Farris v. Rice*, No. 05-cv-1975, 2006 WL 8435181, at *1 (D.D.C. Jan. 17, 2006). Respondents had that opportunity. The Clerk entered defaults, Omni Bridgeway provided Respondents with notice of them, and

Respondents had the opportunity to show up and oppose a default judgment. Kry Decl. Ex. C ¶¶ 2-6 (Dkt. 12). For that reason too, any omission from the affidavit was harmless.[2]

2. Any defect in the affidavit is also irrelevant because it would not justify vacating the ***default judgment***. Respondents never identify any benefit they would derive from an order vacating the entries of default while leaving the default judgment in place. What purpose would that even serve? Instead, Respondents urge the Court to vacate the entries of default on the theory that this would somehow automatically invalidate the judgment too. *See, e.g.*, Resp. Mem. at 8 (vacating defaults would "also render the default judgment void"); *id.* at 10 (vacating default judgment a "necessary consequence"). That is not the law. "[A] default that has become final as a judgment can be set aside ***only*** under the stricter rule 60(b) standards." *Jackson*, 636 F.2d at 835 (emphasis added). A defendant cannot challenge an entry of default under Rule 55(c)'s liberal "good cause" standard only as a back door means of challenging the judgment itself while avoiding the stricter standards of Rule 60(b). Respondents' theory would nullify Rule 55(c)'s clear articulation of different standards for those two types of motions. *See* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).").

Respondents' complaints about the affidavit do not qualify for any of Rule 60(b)'s grounds for vacating a default judgment. Respondents argue that the affidavit rendered the

---

[2] Respondents obliquely suggest that the entries of default were premature because Omni Bridgeway should have waited the six-month period specified by Article 15(2) ***plus*** the two-month period in 28 U.S.C. § 1608(d). Resp. Mem. at 4. That is incorrect. Article 15(2) states that a court "may give judgment" after "a period of time of not less than six months," not six months ***plus*** whatever time domestic law allows for responding to a petition. Hague Service Convention art. 15(2), 20 U.S.T. at 364. No court has required a petitioner to stack those two periods on top of each other. Regardless, any defect was harmless: Omni Bridgeway filed its motion for default judgment nearly ***nine months*** after delivering the petition to Albania's Ministry of Justice. Dkt. 13.

judgment "void" under Rule 60(b)(4). Resp. Mem. at 8. But a judgment is void only when "the rendering court was ***powerless*** to enter it." *Karsner*, 532 F.3d at 886 (emphasis added). Defects in service qualify because "service of process is the means by which a court asserts jurisdiction." *Combs*, 825 F.2d at 442. But a mere procedural defect in the process of obtaining an entry of default or default judgment does not affect the court's power or jurisdiction to enter that judgment. *See, e.g.*, *Choice Hospice*, 125 F.4th at 1014-15 (failure to give Rule 55(b)(2) notice did not render judgment "void"); *Collex, Inc. v. Walsh*, 74 F.R.D. 443, 448-49 (E.D. Pa. 1977) (similar); *United States v. Manos*, 56 F.R.D. 655, 658 (S.D. Ohio 1972) ("It is well established that protections contained in Rule 55 . . . are essentially procedural and the failure to abide by them does not necessarily render a resultant judgment void."). It is telling that the only decisions Respondents identify where courts vacated default judgments based on defects in the entry of default are two Florida ***state court*** cases. Resp. Mem. at 10.

Respondents also invoke Rule 60(b)(6)'s catchall provision, which permits vacatur for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). But that provision applies only in "extraordinary circumstances." *People for Ethical Treatment of Animals v. HHS*, 901 F.3d 343, 355 (D.C. Cir. 2018). No such circumstances are present here.

Moreover, Rule 60(b)(6) does not apply to circumstances "already covered by the preceding five paragraphs." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). Respondents' theory that Omni Bridgeway made a misstatement in its affidavit of default is, if anything, a claim of "misrepresentation" under Rule 60(b)(3). The motion is therefore time-barred by the strict one-year limit on Rule 60(b)(3) motions. *See* Fed. R. Civ. P. 60(c)(1); *Stonehill v. IRS*, No. 06-cv-599, 2024 WL 4679128, at *3 (D.D.C. Nov. 5, 2024), *aff'd*, No. 24-5276, 2026 WL 446303 (D.C. Cir. Feb. 17, 2026).

3. Finally, any defect in the affidavit is not grounds for vacating the judgment because, as Chief Judge Boasberg recently held, Rule 55(a) does not require entries of default in arbitration enforcement proceedings. *See Archirodon Constr. (Overseas) Co. Ltd. v. Gen. Co. for Ports of Iraq*, No. 22-cv-1571, 2024 WL 3844800, at *8 (D.D.C. Aug. 16, 2024). Under the Federal Arbitration Act, a petition to confirm an arbitral award "shall be made and heard in the manner provided by law for the making and hearing of motions." 9 U.S.C. § 6. Enforcement proceedings thus "proceed under motions practice, not notice pleading." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007). Rule 55(a) is solely a ***pleading*** rule. Fed. R. Civ. P. 55(a). If a party files a motion, and the other party files no timely response, the court can simply grant the motion as unopposed. Local Civ. R. 7(b) (D.D.C.). The movant is not required to obtain an entry of default under Rule 55(a) first.

Because Rule 55(a) does not apply to arbitral enforcement proceedings at all, any supposed noncompliance with that rule is not grounds for vacating the judgment. For that reason too, Respondents' complaints about the affidavit of default are no basis for relief.

## III. THE COURT CORRECTLY FOUND SERVICE AND PERSONAL JURISDICTION BASED ON ARTICLE 15(2) OF THE HAGUE SERVICE CONVENTION

Respondents next seek to set aside the default judgment on the ground that Omni Bridgeway never properly served the petition on them and thus never established personal jurisdiction to enter a default judgment. Resp. Mem. at 10-13. This Court fully analyzed those issues and held that Omni Bridgeway's compliance with Article 15(2) established both service and personal jurisdiction. Dkt. 14 at 12-16. Respondents show no error in that careful analysis.

### A. Omni Bridgeway Complied with Article 15(2)

The Hague Service Convention prescribes comprehensive procedures for service of process. Article 3 requires a party to serve a foreign respondent by delivering the documents to

the foreign state's Central Authority. Hague Service Convention art. 3, 20 U.S.T. at 362. Under Article 5, the Central Authority must then serve the documents on the respondent under local law. *Id.* art. 5, 20 U.S.T. at 362. Under Article 6, the Central Authority must fill out and return a certificate setting forth the details of service. *Id.* art. 6, 20 U.S.T. at 363; *see generally Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017).

Article 15(2) of the Convention prescribes an alternative procedure when the Central Authority does not return a certificate of service. Under that provision, "[e]ach contracting State shall be free to declare that the judge . . . may give judgment even if no certificate of service or delivery has been received" if certain requirements are met. Hague Service Convention art. 15(2), 20 U.S.T. at 364. There are three conditions: "(a) the document was transmitted by one of the methods provided for in this Convention"; "(b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document"; and "(c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it." *Id.*

The United States specifically opted in to that Article 15(2) procedure when it ratified the Convention: "In accordance with the second paragraph of Article 15, it is declared that the judge may . . . give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled." Designations and Declarations ¶3, 20 U.S.T. at 373. The United States thus plainly intended that plaintiffs could rely on Article 15(2) to obtain a default judgment when foreign state authorities fail to carry out their service obligations: It took the affirmative step of issuing a formal declaration to embed that mechanism in federal law.

Article 15(2) is a critical component of the Convention's structure. A service treaty that relies on the receiving state's officials to serve process (typically lawsuits brought by foreigners against their own nationals) carries obvious risks of neglect or abuse. Those risks are magnified exponentially where the respondent is a government ministry. In those cases, the Convention essentially relies on foreign governments to serve lawsuits on themselves.

Foreign Central Authorities often drag out service for months if not years – if they ever serve the papers at all. "[I]n some countries, service through a Central Authority can typically take a year or longer." Sarah E. Kramer, *International Service of Process: A Guide for Judges* 7 (Fed. Jud. Ctr. 2021) (Kry Decl. Ex. N). In this case, Albania's Ministry of Justice has refused to serve Omni Bridgeway's petition for ***well over three years***. Kry Decl. ¶22. Article 15(2) is a critical safety valve that "anticipate[s] this possibility." Kramer, *supra*, at 8. "Article 15(2) of the Convention takes into account the plaintiff's legitimate interest in seeing the case progress." Hague Conference on Private International Law, *Service Handbook: Practical Handbook on the Operation of the 1965 Service Convention* ¶430 (5th ed. 2025) (Kry Decl. Ex. O).

Courts routinely apply Article 15(2) to enter default judgments. *See, e.g.*, *Silverman v. Modulgranito Iberico, S.A.*, No. 89-cv-432, 1990 WL 481934, at *1 (D.D.C. Apr. 30, 1990); *Meta Platforms, Inc. v. Nguyen*, No. 21-cv-5002, 2023 WL 8686924, at *5-6 (N.D. Cal. Nov. 21, 2023), *adopted*, 2024 WL 6047147 (N.D. Cal. Feb. 23, 2024); *Artnet Worldwide Corp. Inc. v. Gruber*, No. 21-cv-10459, 2023 WL 6390167, at *2 (S.D.N.Y. Oct. 2, 2023); *Kiss Nail Prods., Inc. v. Shenzhen Jinri Elec. Appliance Co.*, No. 18-cv-5625, 2020 WL 4679631, at *4-5 (E.D.N.Y. July 23, 2020), *adopted*, 2020 WL 4676415 (E.D.N.Y. Aug. 12, 2020); *Leger v. Rivers Edge Treestands, Inc.*, No. 13-cv-326, 2016 WL 909173, at *3 (E.D. Tex. Feb. 8, 2016), *adopted*, 2016 WL 899833 (E.D. Tex. March 8, 2016); *Marschauser v. Travelers Indem. Co.*, 145 F.R.D.

605, 609 (S.D. Fla. 1992). Courts apply Article 15(2) to ***sovereign*** respondents too. *See Box v. Dallas Mexican Consulate Gen.*, 487 F. App'x 880, 886 (5th Cir. 2012); *Scheck v. Republic of Argentina*, No. 10-cv-5167, 2011 WL 2118795, at *4 (S.D.N.Y. May 23, 2011); *Lindsayca USA, Inc. v. Petroleos de Venezuela, S.A.*, No. 21-cv-37, 2022 WL 3588041, at *3-4 (S.D. Tex. Aug. 22, 2022), *adopted*, 2022 WL 4588588 (S.D. Tex. Sept. 29, 2022); *cf. Koch Mins. Sàrl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 35 (D.D.C. 2020) (holding Article 15(2) applicable but denying relief on other grounds). This Court thus traversed well-trodden ground when it applied Article 15(2) to the Respondents in this case. Dkt. 14 at 12-16.

The Court's application of Article 15(2) was thorough and stands undisputed. Omni Bridgeway satisfied each of the three requirements. First, it properly transmitted the service papers to Albania's Central Authority. Dkt. 14 at 14-15; Kry Decl. Ex. A ¶¶ 3-5 (Dkt. 7). Second, it waited a period of at least six months: It waited almost ***nine months*** before moving for a default judgment, and the Court granted the motion after ***eighteen months***. Dkt. 14 at 15-16; Kry Decl. Ex. D (Dkt. 13). Finally, it received no certificate of any kind despite making every reasonable effort to obtain one – efforts this Court catalogued in its opinion. Dkt. 14 at 14-16; Kry Decl. Ex. A ¶¶ 3-13 (Dkt. 7); Kry Decl. Ex. E ¶ 4 (Dkt. 13-1). Under the plain terms of Article 15(2), those circumstances authorized the Court to enter a default judgment.

### B. Omni Bridgeway's Compliance with Article 15(2) Established Both Service and Personal Jurisdiction

Respondents do not dispute that Omni Bridgeway complied fully with Article 15(2). But they argue that Omni Bridgeway's compliance with Article 15(2) was insufficient to establish the service of process or personal jurisdiction necessary to enter a default judgment. Resp. Mem. at 10-13. That theory is incorrect. It defies the plain text of the Convention, contradicts the extensive case law interpreting the provision, and would render Article 15(2) a dead letter.

Under Section 1608 of the Foreign Sovereign Immunities Act, absent a special arrangement for service, a plaintiff must attempt to serve a foreign sovereign by "delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2); *see also id.* § 1608(b)(2) (similar for agencies and instrumentalities). "Personal jurisdiction over a foreign state" exists when an immunity exception applies and "service has been made under section 1608." *Id.* § 1330(b). If the respondent fails to appear and the plaintiff shows its entitlement to relief, the court can enter a default judgment. *Id.* § 1608(e). Service and personal jurisdiction are not unique requirements for foreign sovereigns: Both are required for a default judgment against ***any*** defendant. *See Mwani v. bin Laden*, 417 F.3d 1, 6, 8 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant," and "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service . . . must be satisfied."); 10A Wright & Miller, *Federal Practice and Procedure* § 2682 (4th ed. rev. 2026) ("[T]he court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." (footnotes omitted)).

The Hague Service Convention sets forth several ways to satisfy those requirements. Articles 3, 5, and 6 permit a plaintiff to serve a defendant by delivering the papers to the foreign Central Authority and obtaining a certificate of service in return. 20 U.S.T. at 362-63. Article 8 permits service through diplomatic or consular channels. *Id.* at 363. Article 10 permits parties to serve papers directly by mail if the receiving state does not object. *Id.* Articles 3 and 15(2) provide yet another route: The plaintiff may effect service by delivering the papers to the foreign Central Authority, undertaking every reasonable effort to obtain a certificate of service, and not

receiving one for six months. 20 U.S.T. at 362, 364. Article 15(2) empowers the court to enter a default judgment in those circumstances. *Id.* Given that service and personal jurisdiction are universal predicates for any default judgment, the necessary implication of Article 15(2)'s authorization of a default judgment is that the provision prescribes an effective means of service.

Congress was intimately familiar with those procedures when it enacted the FSIA. Congress passed that statute in 1976, just nine years after the United States ratified the Hague Service Convention in 1967. Pub. L. No. 94-583, 90 Stat. 2891 (1976); Proclamation, 20 U.S.T. at 372 (Kry Decl. Ex. K). The Hague Service Convention was the ***only*** service convention to which the United States was a party at the time, and thus the ***only*** convention to which Section 1608 applied. *See* H.R. Rep. No. 94-1487, at 24 (1976) ("The only such convention to which the United States is at present a party is the Hague Convention . . . ."); S. Rep. No. 94-1310, at 23 (1976) (same). By requiring service "in accordance with an applicable international convention on service of judicial documents," 28 U.S.C. § 1608(a)(2), Congress consciously incorporated the Hague Service Convention – not just particular service methods within that Convention, but the ***entire*** Convention, including Article 15(2). If Congress had intended the FSIA to render Article 15(2) inoperative, surely someone would have said so. They did not.

Courts have thus repeatedly held that Article 15(2) suffices to establish service and personal jurisdiction. In *Scheck v. Republic of Argentina*, No. 10-cv-5167, 2011 WL 2118795 (S.D.N.Y. May 23, 2011), for example, the court explained that "Article 15 of the Convention allows a court to ***obtain jurisdiction*** over a foreign defendant for purposes of giving judgment" when the specified conditions are satisfied. *Id.* at *3 (emphasis added). The court was "entitled to assert jurisdiction over the Republic [of Argentina] because plaintiffs ha[d] satisfied the Article 15 requirements," and as a result, "there was proper service of process." *Id.* at *4. Similarly, in

*Meta Platforms, Inc. v. Nguyen*, No. 21-cv-5002, 2023 WL 8686924 (N.D. Cal. Nov. 21, 2023), *adopted*, 2024 WL 6047147 (N.D. Cal. Feb. 23, 2024), the court found the requirements of "[s]ervice of [p]rocess" and "[p]ersonal jurisdiction" satisfied because the plaintiff's "service efforts complied with the Hague Convention" under Article 15(2). *Id.* at *5-6. This Court invoked that same reasoning: It held that Omni Bridgeway "properly served Defendants consistent with the Hague Service Convention" and that Omni Bridgeway's "compli[ance] with its obligations under the Hague Service Convention [meant] that the court has personal jurisdiction." Dkt. 14 at 14-16.

That Article 15(2) may not result in actual delivery to the respondent does not disqualify it from being a method of "service." Under the Federal Rules, for example, leaving papers with someone of "suitable age and discretion" at the defendant's address is effective service, even if that person neglects to hand them over to the defendant. Fed. R. Civ. P. 4(e)(2)(B). Service by mail is complete upon delivery to the postal service, even if the package gets lost in the mail. Fed. R. Civ. P. 5(b)(2)(C). A petitioner who complies with Article 15(2)'s requirements effects service under the Hague Service Convention, even absent actual delivery to the respondent.

Due process requires only service "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" – not "actual receipt." *Dusenbery v. United States*, 534 U.S. 161, 168-70 (2002); *see also RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 133-34 (D.D.C. 2011); *Meta*, 2023 WL 8686924, at *5. Formally requesting that a foreign government authority carry out its treaty obligation to serve the intended recipient surely meets that standard. In any event, even if due process limited the operation of Article 15(2) in cases where the respondent never receives actual notice of the proceeding, that limitation would be irrelevant here. "***[A]ctual*** notice of the filing . . . more than satisfie[s] [a party's] due process

rights." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). And the evidence of Respondents' actual knowledge is overwhelming and undisputed. *See* pp. 10-11, *supra*.

Respondents' contrary interpretation would have breathtaking consequences. Their position would mean that plaintiffs may ***never*** invoke Article 15(2) when serving a foreign sovereign, and that every case that has relied on that provision to enter a default judgment against a foreign sovereign was wrongly decided. *See* Dkt. 14 at 14-16; *Box*, 487 F. App'x at 886; *Scheck*, 2011 WL 2118795, at *3-4; *Lindsayca*, 2022 WL 3588041, at *3; *cf. Koch Mins.*, 514 F. Supp. 3d at 35. Moreover, since service and personal jurisdiction are required for default judgments against private parties too, Respondents' position would mean that plaintiffs cannot rely on Article 15(2) in those cases either, and that the many private-party cases were likewise all wrongly decided. *See* pp. 19-20, *supra*. Respondents' argument that Article 15(2) does not establish the service or personal jurisdiction necessary to enter a default judgment is effectively an argument that Article 15(2) does not authorize default judgments at all. It would render Article 15(2) a dead letter. The United States clearly did not share that view: It specifically opted in to Article 15(2) when it ratified the Convention. Designations and Declarations ¶3, 20 U.S.T. at 373 (Kry Decl. Ex. K).

Respondents rely heavily on Judge Kelly's recent decision in *Gosain v. Republic of India,* No. 18-cv-2427, 2026 WL 775828 (D.D.C. Mar. 19, 2026). But *Gosain* did not involve a default judgment at all. The respondent in that case appeared prior to judgment and moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *Id.* at *2. The court rightly observed that "Articles 15(1) and 15(2) govern the process for obtaining a ***default judgment***" and do not provide a freestanding basis for personal jurisdiction outside that context. *Id.* at *3.

To the extent *Gosain* went further and suggested that Article 15(2) would not be sufficient to establish service or personal jurisdiction even for a default judgment, its reasoning was simply wrong. The court stated that a plaintiff's failure to obtain a certificate of service "dooms his service argument, full stop." 2026 WL 775828, at *3. But that statement ignores that obtaining a certificate of service under Article 6 is only one of several ways to effect service under the Convention. The theory that a certificate of service is ***always*** required, even when Article 15(2) applies, contradicts the wealth of case law cited above and would mean that no plaintiff could ever rely on Article 15(2) to establish service or personal jurisdiction.

*Gosain* relied heavily on the D.C. Circuit's decision in *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F.4th 1036 (D.C. Cir. 2022). But that case is even less relevant. *Saint-Gobain* concerned Articles 5 and 15(1) of the Convention, neither of which is at issue here. *Id.* at 1040-42. The petitioner in that case did not even invoke Article 15(2), presumably because it made ***no*** efforts, much less "every reasonable effort," to obtain a certificate of service. *Id.* at 1039. The court in *Saint-Gobain* thus explicitly stated that "Article 15(2) . . . is not at issue here" and distinguished *Box* and *Scheck* on that basis. *Id.* at 1041. To the extent *Gosain* extended *Saint-Gobain*'s reasoning to the Article 15(2) context, it ignored *Saint-Gobain*'s own express limitation on its holding.

## IV. MINIMUM CONTACTS ARE NOT REQUIRED

Albpetrol argues that the Court has no personal jurisdiction over it because it lacks "sufficient minimum contacts with the United States." Resp. Mem. at 13. The MIE and AKBN make no similar argument – presumably recognizing that they are not "persons" protected by the Fifth Amendment's Due Process Clause. *See TMR Energy Ltd. v. State Prop. Fund of Ukr.*, 411 F.3d 296, 300-302 (D.C. Cir. 2005). But Albpetrol's argument fails too.

### A. *Fuld* Abrogated the Minimum Contacts Standard

The Supreme Court abrogated the minimum contacts standard for Fifth Amendment due process claims in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025) – a case that Respondents inexplicably do not even mention. *Fuld* held that "the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard" and thus imposes no territorial limitations on congressionally authorized assertions of personal jurisdiction in federal court, at least so long as they are "reasonable[ ]." *Id.* at 12-16, 18-24. Applying a more flexible standard, the Court upheld a statute that granted jurisdiction over certain suits against Palestinian entities despite the absence of minimum contacts. *Id.* at 23-25. The statute reflected "the political branches' 'delicate judgments' on matters of foreign affairs." *Id.* at 19. The plaintiffs had "a strong interest in seeking justice." *Id.* at 24. And the proceedings imposed no "unfair or unmanageable burden" on the defendants. *Id.*; *see also Gligorov v. Nation of Brunei*, 185 F.4th 1169, 1177-84 (D.C. Cir. 2026) (applying new standard).

The Ninth Circuit recently applied *Fuld* to find jurisdiction over a foreign state entity in an arbitration enforcement case indistinguishable from this one. *See Devas Multimedia Priv. Ltd. v. Antrix Corp. Ltd.*, No. 20-36024, 2026 WL 2330570 (9th Cir. Aug. 12, 2026). The court noted that the FSIA expressly confers personal jurisdiction. *Id.* at *7 (citing 28 U.S.C. § 1330(b)). The statute and its immunity exceptions "reflect[ ] the considered judgment of Congress and the Executive to enforce the United States' treaty obligations" to enforce foreign arbitral awards. *Id.* The burden on the respondent was limited. *Id.* at *8. And the petitioner's interests were substantial because it had "no alternative forum outside the United States 'in which to execute on property [the respondent] may own in the United States.' " *Id.*; *see also* William S. Dodge, *Fuld's Implications for the FSIA (and Other Federal Statutes)*, Transnat'l Litig. Blog (July 10, 2025) (explaining that *Fuld's* reasoning "fits the FSIA like a glove") (Kry Decl. Ex. P).

Those same considerations apply here. The Court thus has personal jurisdiction over Albpetrol without regard to any minimum contacts.

**B. Albpetrol Consented to Jurisdiction**

Section 25.3(f) of each License Agreement states: "Each Party hereto agrees that any arbitral award rendered against it pursuant to this Section 25.3 may be enforced against its assets wherever they may be found and that a judgment upon the arbitral award may be entered in any court having jurisdiction thereof." Kry Decl. Ex. J § 25.3(f) (Dkts. 1-4, 1-5, 1-6). That provision constitutes consent to personal jurisdiction without regard to minimum contacts.

"'[E]xpress or implied consent' can . . . ground personal jurisdiction" even absent minimum contacts. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality). Courts have repeatedly found consent to personal jurisdiction from contract language no different from the text here. *See, e.g.*, *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1276 (2d Cir. 1971) ("judgment upon an award may be entered in any court of competent jurisdiction"); *Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A.*, No. 19-cv-11654, 2020 WL 7261111, at *4 (S.D.N.Y. Dec. 10, 2020), *aff'd in relevant part*, 49 F.4th 802 (2d Cir. 2022); *Benship Int'l, Inc. v. Bangl. Agr. Dev. Corp.*, No. 90-cv-5851, 1991 WL 710, at *1 (S.D.N.Y. Jan. 3, 1991); *LeJacq Publ'g, Inc. v. Am. Soc'y of Contemp. Med., Surgery & Ophthalmology*, No. 88-cv-7242, 1989 WL 37673 (S.D.N.Y. Apr. 11, 1989). The United States recently endorsed that view, explaining that a foreign state entity "consent[s] to personal jurisdiction . . . by explicitly agreeing that [an] arbitral award shall be binding and conclusive and shall be entitled to be 'entered in any court of competent jurisdiction.'" Brief for United States at 23-26, *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, No. 23-1201 (U.S. filed Dec. 11, 2024) (Kry Decl. Ex. Q). For that reason too, the Court has personal jurisdiction over Albpetrol.

## V. OMNI BRIDGEWAY PROPERLY SERVED THE DEFAULT JUDGMENT THROUGH THE CLERK'S OFFICE

Respondents finally urge the Court to vacate its post-judgment Section 1610(c) order authorizing attachment and execution efforts. Resp. Mem. at 16-19. They claim that Omni Bridgeway did not wait long enough after attempting to serve the default judgment under the Hague Service Convention before serving it by mail through the Court Clerk's office instead. *Id.* That argument asks this Court to revisit a factual finding that was amply supported by the record and provides no basis for vacating the order under Rule 60(b).

Before applying for a Section 1610(c) order, a judgment creditor must serve the default judgment on the respondent under Section 1608. 28 U.S.C. §§ 1608(e), 1610(c). The judgment creditor presumptively must attempt service under the Hague Service Convention, but "if service cannot be made" by that method, it may serve the default judgment by mail through the Court Clerk's office instead. *Id.* § 1608(a)(2), (a)(3). In other words, a party must "attempt service by the first method (or determine that it is unavailable) before proceeding to the second method." *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 148 (D.D.C. 2011).

Omni Bridgeway delivered the default judgment to Albania's Ministry of Justice under the Hague Service Convention on March 4, 2025. Kry Decl. Ex. F ¶¶ 2-3 (Dkt. 16). The Ministry never responded. Kry Decl. Ex. G ¶ 2 (Dkt. 26). Accordingly, on April 9, 2025, Omni Bridgeway served the default judgment by mail through the Clerk's office. *Id.* ¶¶ 3-4. Respondents find no fault with either service attempt in isolation. But they complain that Omni Bridgeway did not wait long enough ***between*** the two attempts. Resp. Mem. at 17-19.

This Court disagreed. "[T]he Ministry of Justice has neither provided . . . a certificate nor communicated with Omni Bridgeway or its counsel at all." Dkt. 29 at 6. "Given the Ministry of Justice's lack of response, and its failure to respond to Omni Bridgeway's attempts at service

before default judgment was entered, Omni Bridgeway concluded that service could not be made pursuant to the Hague Service Convention." *Id.* (citations omitted). "The court agrees that, in light of the Ministry of Justice's repeated failures to serve Respondents, Omni Bridgeway reasonably concluded that service could not be made pursuant to [the Hague Service Convention]." *Id.*

Respondents quarrel over that factual finding. They urge that "service via a central authority under the Hague Convention can take months." Resp. Mem. at 18. But that argument ignores the crucial context for the Court's finding. By April 9, 2025, when Omni Bridgeway commenced service through the Clerk's office, Omni Bridgeway's original request for service of the petition had been outstanding for over ***twenty months***, with no word from the Ministry at all since November 2023. Kry Decl. Ex. A ¶¶3-9 (Dkt. 7); Kry Decl. Ex. I ¶8 (Dkt. 27-1). That context strongly supported Omni Bridgeway's determination to proceed through the Clerk's office instead. There were two possible explanations for why the Ministry had not served the default judgment: Either the Ministry needed more time, or it was not going to serve the document ever. The Ministry's prior track record made the second explanation much more likely than the first. That history amply supported Omni Bridgeway's determination – and the Court's factual finding – that service "could not be made" under the Convention. Dkt. 29 at 6.

Respondents assert that the Ministry's prior refusal to serve the petition is irrelevant because it involved "a separate and independent procedure." Resp. Mem. at 19. That argument defies common sense. A foreign central authority's refusal to comply with a prior service request by the ***same*** petitioner, to serve the ***same*** respondents, in the ***same*** case, under the ***same*** treaty provision is uniquely probative. This Court has upheld a determination that service could not be made under the Hague Service Convention based on evidence that the receiving state ***generally*** "'does not comply with its obligations' under the Hague Service Convention."

*Trapote v. Bolivarian Republic of Venezuela*, 729 F. Supp. 3d 34, 36 (D.D.C. 2024). If evidence from ***different*** cases can suffice to justify service through the Clerk's office, surely the Ministry's prior track record in ***this very case*** is sufficient too.

Even if there were reasonable grounds to debate the Court's finding, Respondents would not be entitled to relief under Rule 60(b). Respondents invoke Rule 60(b)(1) on the theory that the Court made a "mistake." Resp. Mem. at 17. But while Rule 60(b)(1) permits relief for "judicial errors of law," *Kemp v. United States*, 596 U.S. 528, 539 (2022), the rule "distinguishes a mistake of law from a difference of opinion," *In re Rosebar*, 674 B.R. 810, 829-30 (D.D.C. 2025) (rejecting theory that court should have "placed greater weight on other factors"); *see also Jones v. Falconwood Inc.*, No. 23-cv-2490, 2026 WL 2137991, at *1-2 (D.D.C. July 24, 2026). Respondents essentially complain that the Court should have given less weight to the Ministry's track record in this case, given more weight to typical service times in other countries, and made a different factual finding about whether Albania's Ministry of Justice would serve the default judgment on Respondents or not. Those are not "judicial errors of law" under Rule 60(b)(1).

Moreover, a party seeking relief under Rule 60(b)(1) must "make some showing of why [it] was justified in failing to avoid [the] mistake." *Rowe v. PChange LLC*, No. 22-cv-3098, 2025 WL 2803859, at *2 (D.D.C. Oct. 2, 2025), *appeal filed*, No. 25-7169 (D.C. Cir. Oct. 29, 2025); *see also* 11 Wright & Miller, *Federal Practice and Procedure* § 2858 & n.17 (3d ed. rev. 2026). Respondents received actual notice of the Section 1610(c) motion at the time it was filed. Kry Decl. Ex. H at 3 (Dkt. 27). If they had some compelling response, they should have shown up and avoided the purported "mistake" by bringing their arguments to the Court's attention in a timely opposition. The Court should not entertain arguments for reconsideration that could and should have been made a year ago when the motion was briefed.

**CONCLUSION**

The Court should deny Respondents' motion to vacate the entries of default, the default judgment, and the Section 1610(c) order.

Dated: September 18, 2026
Washington, D.C.

/s/ Robert K. Kry

Robert K. Kry
D.C. Bar # 490545
Jackson A. Myers
D.C. Bar # 1735365
MOLO LAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorneys for Petitioner*
*Omni Bridgeway Limited*